## WILSON & CO. v. STATE INDUSTRIAL COMMISSION et al.

No. 26619. June 16, 1936.

Bennett & Bennett, for petitioner.

M. J. Parmenter, for respondent.

CORN, J. This is an original proceeding in this court to review an order of the State Industrial Commission in favor of the respondent J. D. Cox, made and entered on the 13th day of August, 1935. The parties will be referred to hereinafter as petitioner and claimant.

This action was commenced on June 22, 1935, when J. D. Cox filed his first notice of injury and claim for compensation setting forth that on the afternoon of April 12, 1935, he sustained an accident by getting pepper in his eyes, throat, and lungs. Claimant's attorney then filed a motion for hearing, asking that the case be set down for trial to determine liability and extent of disability. To this motion claimant's employer, Wilson & Company, filed an answer admitting the employment of the claimant on the 12th day of April, 1935, but specifically denied that the claimant sustained an accidental personal injury arising, out of and during the course of his regular employment, and further alleged that any injury or disability is entirely due to conditions disassociated with claimant's employment. The cause was set for hearing and testimony was taken on the 12th day of August, 1935, before Commissioner T. B. Lunsford.

Claimant testified in substance that on April 12, 1935, he was employed by Wilson & Company, and his duties required him to handle hams, taking them off a rack and laying them on a table for inspection; that while handling one of the hams which was covered with black pepper he sneezed, drawing the pepper into his throat and lungs; that he immediately became choked and had difficulty breathing for several minutes and that his foreman took him to the doctor and then to the Oklahoma General Hospital, where he remained three or four days and received medical attention; that since said accident he has felt weak and nervous and his lungs and throat have pained him; that he had never had an accident before to his lungs; that he drew 42 cents an hour and worked anywhere from six to eight hours a day and averaged from 32 to 46 hours a week; that he cannot do the work that he was doing at the time he received his accident.

Under cross-examination claimant testified that he had been doing the same kind of work off and on for seven or eight years, but that this was the first time he had ever sneezed while handling the hams covered with black pepper; that just before the sneeze the pepper burned his nose, but that this was the first time that this had ever happened; that he was about six inches away from the ham when he sneezed and the pepper puffed up in his face; that he has used and been around black pepper all his life, but he had never had any trouble before; that Wilson & Company had never discharged him, but that he just did not feel like going back to work; that although it had been quite a while since the doctor treated him, he had never been discharged as being unable to return to work.

Dr. W. B. Fuller testified for and in behalf of the claimant, and stated in substance that Mr. Cox, the claimant, first came to him on May 5, 1935, and that he found upon examination that claimant was suffering with acute laryngitis and his bronchial tubes were affected; that claimant told him that he had been working for Wilson & Company, and while handling a ham which was covered with black pepper he sneezed and got quite a bit of pepper in his throat and nose and was taken to the Oklahoma General Hospital; that black pepper is very harmful to the mucus membrane of the nose and throat and may also affect the bronchial tubes and it tends to cause laryngitis; that at the time he examined him claimant was unable to carry on the work he had been doing; that he commenced treating claimant and was treating him at the time of the hearing; that at the time of the hearing and since the date witness had been treating claimant said claimant has been temporarily totally disabled.

Under cross-examination the doctor testified that he had never treated anybody from the packing plants who had been affected with black pepper, but that he had treated people who had laryngitis from black pepper; that he treated a case of bronchitis due to black pepper at the University Hospital in 1921 or 1922, but could not remember the name of the patient; that claimant told him that he had been injured in April, 1935; that he painted claimant's throat with tincture of methylate and gave him a spray for his nose and throat and also gave him a prescription for a gargle; that he had seen claimant at his office about twice a week since the 5th of May; that he had informed claimant that he was

temporarily totally disabled and it would not be good for him to go back to work on account of his condition; that claimant has a wheeze in his lungs; that claimant has low blood pressure, but the low blood pressure is not due to the breathing of the black pepper, but is due to claimant's general condition; that assuming that claimant is a man of 70 years of age and had been working for Wilson & Company for a period of approximately 15 years and had low blood pressure but was working there, then breathed an excessive amount of pepper and immediately developed laryngitis and bronchitis, the breathing of the pepper was the cause of his inability to work.

Dr. J. P. McGee, testifying in behalf of the petitioner, stated that he is an eye, ear, and nose and throat specialist; that he examined claimant on July 29, 1935, at which time he gave a history that on April 12, 1935, while handling hams rolled in black pepper, he got some pepper in his face, eyes and lungs; that examination of the eyes showed a mild chronic catarrhal conjunctivitis; that the cornea, lenses, media, and fundus were clear in each eye and he had a high degree of hyperopia, which is far-sightedness; that the loss of vision which he found was attributable to the high degree of hyperopia rather than to the accident; examination of the throat showed infected tonsils, the pharynx was reddened and mucus membrane thickened, which indicated a chronic laryngitis; that it is possible that the condition might have been the result of some irritation that claimant could have had from the outside, but in his opinion, an irritation that happened four months ago without any recurrence should have been gone, and for that reason witness felt that it was the result of infection in the tonsils; that it was possible that the irritation could have continued there, but ordinarily he would not expect it to; that he could find no injury to the eyes as a result of irritation from pepper; that it is possible that breathing pepper could cause bronchitis, but that he felt that with the length of time that had elapsed and without further exposure the condition was not the result of the accident; that he could find no irritation of the nose; that he doubts that the pepper claimant breathed in April had anything to do with the condition at the time he examined him.

Under cross-examination the doctor testified that he knew nothing of the claimant's general physical condition; that if claimant does not over-exert himself or become fatigued, the condition will clear up quicker;

that pharyngitis is a condition similar to laryngitis, except that it is higher up in the throat; that in a private patient he would be of the opinion that the tonsils were the cause of the condition, but he would not say that the pepper could be definitely ruled out; that in a man as old as claimant one would perhaps expect the condition to remain there, even under treatment, longer than in a young man.

Dr. Neil W. Woodward testified that he is the regular physician for Wilson & Company; that he examined the claimant on August 8, 1935, and obtained a history of the accident and his complaints; that he found a slight irritation of the nose and throat and does not believe that claimant has any permanent partial disability as a result of the accident; that he saw claimant about one hour after the accident and found that he had a slight irritation of the throat at that time; that he treated him and put him in the Oklahoma General Hospital for observation, where claimant remained for a few days, and the claimant got along very well under his treatment; that he thinks he discharged claimant along in the middle of June; that claimant was able to work at that time; that black pepper will cause local irritation, but the effects of it will wear off very quickly; that he has known Mr. Cox for several years and that he has a low grade of chronic conjunctivitis; that he was government inspector of meats for a period of seven years and had occasion to be stationed in the ham department very frequently; that he had never observed any cases of pharyngitis, laryngitis, or bronchitis as a result of black pepper during the time he was inspector or since he has been company doctor, which takes in a period of 12 years, altogether; that other men are subjected to the same conditions, but that he has never seen a case like claimant's due to black pepper.

Under cross-examination Dr. Woodward testified that some people would be more susceptible to pepper than others; that there might be 10 or 15 men working around the hams and not one of them would be affected, because they would not be susceptible to black pepper; that Mr. Cox might be one of those individuals who might be susceptible to black pepper in large quantities, but if so, the result would be fleeting—it would be temporary; that he found no laryngitis the last time he examined claimant, but only a slight irritation of the throat; that he examined claimant about one hour after the accident and found only a mild and very slight irritation, but that

he hospitalized claimant because he wanted to watch him; the black pepper could cause a temporary laryngitis, but chronic laryngitis is due to infection which has imbedded itself in the tissue; denied that a chronic laryngitis could be the result of breathing pepper, but would be due to some sort of an infection; that if claimant had chronic laryngitis and breathed the pepper, it would make it acute for the time being, but the effect of the pepper would wear off and it would go back to the position it was in before the irritation from the pepper was superimposed on it; that he had treated claimant before the pepper episode.

Mr. Deveurx Shields testified that he is foreman of the smokehouse at Wilson & Company, and has been employed in packing house work for 14 years; that ordinary hams are just smoked and wrapped, but country style hams are smoked and rolled in black pepper; that he has been working in this department for 13 years and has never known of a case of laryngitis or bronchitis from the black pepper that comes from the hams; that he has never suffered any ill effects, although at times he sneezes and his eyes water; that he never saw the pepper come up in a cloud, but that it was very strong.

Under cross-examination witness testified that in handling the hams some of the pepper would get in the air; that he is not a doctor and does not know what laryngitis or bronchitis is and was not in a position to testify as to that; that Mr. Cox had always been a good worker, but he has not worked for some little time.

Dr. C. D. Marshall testified that he is claim agent for Wilson & Company and has been such for five years; that he is familiar with the department that Mr. Cox worked in and that a large number of men worked there, but he has never known of a single case of laryngitis or bronchitis.

At the conclusion of the testimony the commission made its order and award, which in part reads as follows:

"The commission is of the opinion, by reason of the aforesaid facts, that claimant is entitled to $151.30, which is 17 weeks' compensation at the rate of $8.90 per week, computed from April 12, 1935, to August 14, 1935, less the five-day waiting period, and less any sum or sums heretofore paid claimant, and that compensation should be continued at the rate of $8.90 per week until such temporary total disability shall cease or until otherwise ordered by the commission."

Petitioner has contented itself with arguing one assignment of error and that is that the evidence is wholly insufficient to show that claimant sustained an accidental personal injury arising out of and in the course of his employment within the meaning of the Workmen's Compensation Law of this state, and that any injury which may have been suffered by respondent either arose from natural causes or was the result of an occupational disease contracted by respondent during the course of his employment.

In answer to this proposition, this court is bound by the long-established rule that each and every finding of the Industrial Commission is final and will not be disturbed by this court if there is any competent testimony in the record reasonably tending to support said finding. And in this connection, not only is there competent evidence tending to show that this man sustained an accidental personal injury arising out of and in the course of his employment with Wilson & Company, but such finding is supported by all the testimony.

In Ward v. Beatrice Creamery Co., 104 Okla. 91, 230 P. 872, this court held:

"The term 'accidental injury,' as used in the Workmen's Compensation Act of this state, must not be given a narrow meaning, but according to the great weight of English and American authorities, the term is to receive a broad and liberal construction, with a view of compensating injured employees, where the injury results through some accidental means, was unexpected and undesigned, or may be the result of mere mischance or of miscalculation as to the effect of voluntary action."

There is not one iota of proof or circumstance that claimant deliberately breathed this pepper, but, on the other hand, it shows that he was unfortunate enough to sneeze just at the time when he was close to one of the heavily pepper-coated hams.

In Johnson Oil Refining Co. v. Guthrie, 167 Okla. 83, 27 P. (2d) 814, it was held:

" 'Accident', within Compensation Law, is distinguished from 'occupational disease' in that accident arises from some definite event, date of which can be fixed with certainty, but which cannot be so fixed in case of occupational disease (Comp. St. 1921, sec. 7282 et seq., as amended). * * *

"Under the evidence the condition of claimant was probably progressively brought about by the inhaling of gas fumes and dust for a period of time, but on a

definite and specified date he went to work as usual, and after working a short time became suddenly ill and was unable to work further. The evidence is that on this certain date he had reached his limit and that the breathing of the gas fumes and coke dust on this particular occasion was the exciting cause of his present condition. Such was the finding of the commission, which is sustained by the evidence."

In this case there is no evidence that the claimant had progressively become worse from the ill effects of breathing pepper, but the facts are undisputed that his disability dates from a certain and definite time and that his disability came on suddenly, was unforeseen and unexpected.

In the case of Tri-State Contractors v. Althouse, 166 Okla. 296, 27 P. (2d) 1041, the law is stated as follows:

"An injury to an employee, engaged in a hazardous occupation, resulting from exposure to, and inhaling of, cement dust during a short period of time (three weeks in this case), which begins to manifest itself soon after the employee is first exposed and grows progressively worse, culminating at the end of such short and definite period of time in a disability, is sufficiently certain and definite in point of time to be an 'accidental injury' within the meaning of that term as used in connection with the Workmen's Compensation Act."

The award of the State Industrial Commission is affirmed.

OSBORN, V. C. J., and BUSBY, WELCH, PHELPS, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS, J., absent. RILEY, J., not participating.