**J. C. ADAMS, Petitioner,**

v.

**REED ROLLER BIT COMPANY, The Travelers Insurance Company, The State Industrial Commission, and Special Indemnity Fund, Respondents.**

**No. 38171.**

Supreme Court of Oklahoma.

Feb. 24, 1959.

Leo J. Williams, Oklahoma City, Dick Hansen, Boulder, Colo., for petitioner.

Looney, Watts, Looney & Nichols, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

BERRY, Justice.

On December 3, 1957, J. C. Adams, hereafter referred to as "Claimant", filed his first notice of injury and claim for compensation. He stated therein that on "several occasions during the past year" he sustained "permanent" injuries to his eyes resulting from his "eyes (being) burned by welding equipment" while employed as a "welder's helper" by Reed Roller Bit Company.

In its order denying the claim for compensation, the Industrial Commission concluded as follows:

> "Claimant did not sustain an accident as alleged in his Form-3 claim filed herein.

> "That claimant's loss of vision has not increased materially since 1951 and is not due to the alleged accident of June, 1957.

> "It is therefore ordered, That claimant's claim for compensation be and the same is hereby denied."

The parties construe the language above quoted as presenting these issues. Does the evidence develop that claimant's alleged accident is an accidental injury under the Workmen's Compensation Act? Is there any competent evidence sustaining the order of the Industrial Commission?

The claimant testified that about 1939 he sustained a complete loss of the use of his *left* eye for which he received maximum compensation; that about the middle of June, 1957, he was assisting welders by holding objects which they welded and while so engaged received a flash burn to his right eye from a welding torch; that he was not furnished with equipment that would protect his eyes; that he promptly told the foreman about the burn and from the foreman received "first aid, (who) put dope on it"; that his wife put cold packs on his right eye the evening of the accident; that he did not go to a doctor; that he continued to work until September, 1957 when he was "laid off"; that from August, 1956, to the date of the flash burn above referred to he sustained flash burns to his right eye "a number of times—half a dozen times"; that on each occasion his wife treated the burns with cold packs; that as a result of the June, 1957, accident it was difficult for him to do his work and that he required assistance because he couldn't see; that after the accident the eye was "weaker—it hurts more and I don't see, that is all I can tell you"; that he started wearing glasses some five or six years prior to the hearing; that the glasses were prescribed by Dr. M. of Oklahoma City, Oklahoma; that he had gone to both Dr. G. one of which doctors had changed his glasses twice; that in the 30's Dr. W. treated his *left* eye.

Dr. G. examined claimant's right eye in October, 1957, and his medical report covering said examination was introduced in evidence without objection. The body of this report reads as follows:

"History: Patient says he has had repeated arc burns to the right eye, received over a period of time while in the employ of Reed Roller Bit Co., the last occurring in June, 1957; that the injury to his left eye occurred in 1939, leaving him totally blind in that eye.

"Examination: Left eye—light perception only. Eye turns out. Scar on pupil area.

"Right eye—vision unaided 20/300.

"I examined Mr. Adams in March, 1951, at which time his vision in the right eye was 20/100, with glasses. The vision is now 20/150 with glasses.

"Conclusion: It is my opinion that Mr. Adams has in excess of eighty percent loss of vision in each eye, and is industrially blind; and, from the history furnished me by the patient, it is my opinion that the loss of vision in the right eye is a result of repeated electric arc burns which he received over a period of time, the last occurring in June, 1957."

The respondents took Dr. G.'s deposition. Dr. G. testified that he was an eye, ear, nose and throat specialist; that he first saw claimant in 1951; that at that time the corrected vision in claimant's right eye was 20/100's; that the uncorrected vision in said eye "was better than 20/200's"; that the uncorrected vision in the right eye in 1951 was between 20/100's and 20/200's; that he examined claimant's right eye in October, 1957; that the uncorrected vision in said eye in October, 1957, was 20/300's and the corrected vision was 20/150's.

Dr. G's medical report and testimony therefore develops that the loss in uncorrected vision to claimant's right eye between 1951 and October, 1957 was in excess of 20/100's and that the loss in corrected vision to said eye over said period was 20/50's.

The only medical proof offered by respondents was in the form of medical reports made by Dr. L. The body of the first report, which was under date of December 27, 1957, is as follows:

"Mr. J. C. Adams was examined in this office on Jan. 26, 1957. He stated

that about 20 years ago a tree limb struck his left eye which caused him to lose his vision in the eye for about five years at which time the vision gradually returned. He stated that during the past 12 years he has had repeated electric arc burns of his right eye and that during this time the vision in the eye has gradually become worse.

"Examination of the right eye reveals the lids, conjunctive, cornea, iris and fundus of the eye to show no pathology. The vision in the eye without glasses is 20/200. With glasses he admitted seeing 20/150.

"Examination of the left eye showed the lids and conjunctive to be normal. There was some scarring of the cornea in the inferior central portion. The lens in the eye was absent with some remnants of its capsule attached to the iris. The fundus showed no pathology. The vision in this eye without glasses was large objects. With glasses he could see 20/200.

"No defect in the visual fields could be detected in either eye. Likewise no central scotoma could be demonstrated with a 2mm white test object. He stated that he could not see a test object smaller than this.

"Impression:

"1. History of injury to left eye with resulting cataract which has absorbed.

"2. History of repeated electric arc burns to the right eye.

"The admitted vision in this case is completely out of proportion to the examination findings. It is possible that he might have some visual loss due to repeated electric arc burns; but if this were true, he should show a central field visual scotoma.

"From these findings my impression is that due to malingering the true visual acuity cannot be determined."

The second medical report, which is under date of January 10, 1958, reads as follows:

"The glasses that Mr. Adams was wearing when he came for examination on December 26, 1957, corrected the vision of his right eye to 20/100's which was the same vision that he obtained with the glasses found best for him during his examination."

Do the medical reports of Dr. L. represent competent evidence sustaining the Industrial Commission's findings that "claimant's loss of vision has not changed materially since 1951 and is not due to the alleged accident of June, 1957"?

Dr. L. first stated that his examination of claimant's right eye showed "no pathology". Maloy, in his work "Medical Dictionary for Lawyers", Second Edition, defines the word "pathology" as follows:

"2. The condition of an organ, or any part of the body, produced by disease."

The eye injury complained of in the instant case is alleged to have resulted from a burn (trauma), not disease. Therefore, the fact that an examination of the right eye failed to show "disease" therein is not of material significance. The statement that "It is possible that (claimant) might have some visual loss due to repeated electric arc burns" cannot be reconciled with, and is, in fact, wholly inconsistent with the statement that "if this were true, he should show a central field visual scotoma, (blind spots)". It is patent that if "central field scotoma" invariably results from electric arc burns as suggested by Dr. L. then of necessity it would be impossible for claimant to have sustained electric arc burns to his right eye.

█ We held in Sparks v. General Mills, Inc., Okl., 262 P.2d 155, 156, that "indefinite, equivocal, ambiguous and inconsistent" medical proof (report) was insufficient to sustain an award based thereon.

We believe that the language last above quoted is particularly applicable to Dr. L.'s

medical report and for said reason that there is no competent evidence reasonably tending to support the Industrial Commission's finding "that claimant's loss of vision has not increased materially since 1951 and is not due to the alleged accident of June, 1957."

■ If the Industrial Commission intended to hold that the alleged injury under consideration cannot be classified as an "accidental injury" within the purview of the Workmen's Compensation Act (85 O.S.1951 § 1 et seq.), and this is one of the constructions that the parties place on said Commission's order, the Industrial Commission erred. In Standard Roofing & Material Company v. Ross, Okl., 279 P.2d 947, 948, we had this to say in the first paragraph of the syllabus:

> "1. The term 'accidental injury', as used in the Workmen's Compensation Act of this state, 85 O.S.1951 § 1 et seq., must not be given a narrow meaning, but the term is to receive a broad and liberal construction, with a view of compensating injured employees, where the injury results through some accidental means, was unexpected and undesigned, or may be the result of mere mischance of miscalculation as to the effect of voluntary action."

In passing upon the issue under discussion, we held as follows in Andrews Mining & Milling Co. v. Atkinson, 192 Okl. 322, 135 P.2d 960, 961:

> "(2, 3) An 'accident' is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens. In the term 'accidental injuries', the substantive 'injuries' expresses the notion of a thing or event, that is, the wrong or damage done to the person, while 'accidental' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening, or coming by chance or without design, taking place unexpectedly

or unintentionally. See Vaughn & Rush v. Stump, 156 Okl. 125, 9 P.2d 764; Winona Oil Co. v. Smithson, 87 Okl. 226, 209 P. 398; Ward v. Beatrice Creamery Co., 104 Okl. 91, 230 P. 872; Hidden Treasure Coal Co. v. Urist, 112 Okl. 245, 240 P. 640; Shell Petroleum Corp. v. White, 176 Okl. 573, 56 P.2d 830; Wilson & Co. of Oklahoma v. State Industrial Commission, 177 Okl. 234, 58 P.2d 905; Johnson Oil Refining Co. v. Guthrie, 167 Okl. 83, 27 P.2d 814, 90 A.L.R. 616, and see annotation at page 619."

The Superior Court of Pennsylvania in Barkus v. Thornton-Fuller Co., 157 Pa. Super. 239, 42 A.2d 320, 321, held that:

> "The sudden exposure to the intense light of the welding arc was a 'mishap,' an 'untoward event' or 'fortuitous happening'. It was unexpected and 'aside from the usual course of events.' As the opinion of the board aptly puts it: '* * * there was a concatenation of untoward circumstances which must be construed as an accident. The arc was dangerously close, it was unshielded and the shock to the claimant's eye by the extraordinarily brilliant beam of light was as certainly a trauma as it would have been if the claimant had been struck by something more tangible in substance.'"

An eye burn sustained by an employee as a result of exposure to arc-light flashes from acetylene-welding operator was held to be an accidental injury in Great American Indemnity Co. v. State Compensation Insurance Fund, 108 Colo. 323, 116 P.2d 919. See also Haden v. Maryland Casualty Co., La.App., 18 So.2d 238 and Jackson v. New York Shipbuilding Corporation, 119 N.J.L. 542, 197 A. 284.

■ We are not unmindful that this court has strictly and consistently adhered to the rule that the findings of the Industrial Commission as to the cause of the disability arising from an accidental injury will be sustained when there is any competent evidence reasonably tending to sup-

port such finding. We do not now intend to depart from such holdings. However, we are of the opinion that under the facts in the present case the findings of the Commission were based solely on indefinite, ambiguous and inconsistent medical proof to such an extent that the Commission could not make a proper finding as to the alleged injury or extent thereof.

The order of the Industrial Commission is vacated and said Commission is directed to grant the claimant a new hearing herein.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, BLACKBIRD and IRWIN, JJ., concur.

JOHNSON, J., dissents.