CITY OF TULSA, a Municipal Corporation, self insured as Own Risk, Petitioner,

v.

STATE INDUSTRIAL COURT, and Maldine Hyde, Respondents.

No. 41946.

Supreme Court of Oklahoma.

March 14, 1967.

Charles E. Norman, Tulsa City Atty., Dewey Stark, William M. Northcutt, Waldo Bales, Asst. City Attys., Tulsa, for petitioner.

McGee & Dowd, by W. Timothy Dowd, Tulsa, G. T. Blankenship, Atty. Gen., for respondents.

BLACKBIRD, Justice:

This is an original proceeding to review an award entered by the State Industrial Court in favor of respondent, Maldine Hyde, for death benefits under the provisions of the Oklahoma Compensation Act. Respondent Maldine Hyde, as a matter of convenience will be referred to herein as claimant and petitioner City of Tulsa as respondent, the same being the respective relation the parties bore to each other in the trial court.

Claimant Maldine Hyde is the widow of Ralph Hyde, deceased. On May 13, 1964, Hyde was employed as a police officer by the respondent City, and, while overpowering an alleged law violator, he sustained personal injuries. He died on August 16, 1964. The death certificate recites the immediate cause of the death as being "(a) Acute circulatory failure, due to (b) Profound anemia", and to "(c) Acute lymphacytic leukemia."

The State Industrial Court held there was a causal connection between the death of Hyde and his injuries of May 13, 1964, therefore claimant was entitled to recover death benefits. The sole question for review by this court is the sufficiency of the evidence to sustain the award.

The observable injuries sustained by Hyde on May 13, 1964, were torn tendons to the left little finger. He was treated at the Tulsa Clinic. The treating doctor dismissed him as being able to return to work with no permanent disability. Hyde at that time made no complaints of injuries to his back, diabetic difficulties, or any other illness or disability with the exception of the injured finger. In his report, the examining doctor stated, among other things, that the patient's symptoms were due "entirely" to that injury, that it did not result in permanent disability, and that there was no evidence of infectious disease.

Hyde's work record was submitted in evidence. This record reflects that he worked regularly during the month of May, including May 13, the day of the accident, and May 14, the day afterward, with the exception of scheduled days off and 4 days when he reported sick. He worked regularly from June 1, 1964, to June 10, 1964, with the exception of scheduled days off. His work record during this period was practically the same as during the months of January, February, March, April, and May 1964, up to the date of the accident. He ceased working on June 10, 1964, and was reported as being sick.

Two fellow police officers testified that after Hyde returned to work he complained of pains in his back, did not have any pep, and "looked bad".

Claimant testified that prior to the accident, the deceased was a healthy, robust man, held three jobs, engaged in outdoor sports and "wanted to wrestle somebody all the time;" that three days after the accident Hyde commenced complaining of "his back hurting"; that he tired easily; that about June 6, he was treated at Hillcrest Hospital and on August 3, 1964, was admitted to the Oklahoma Osteopathic Hospital, where he died on August 16th; that prior to this time he had been treated by a chiropractor, but the chiropractor did not treat him for diabetes and said he had no diabetes; that, prior to the date of the accident, Hyde did not "have diabetes mellitus" nor "acute Leukemia".

Dr. N. E. C., an osteopathic physician, testified, on behalf of claimant, that he first treated the deceased on August 3, 1964; that deceased was suffering from a diabetic condition and "acute leukemia;" that he treated the diabetic condition and Hyde improved considerably; that diabetes is a disease caused by failure of the pancreas gland, and is not related to trauma, but may be aggravated by trauma, overexertion, or improper eating; that, in his opinion, the accident aggravated the diabetic condition, and materially contributed to the death of the deceased; that it is difficult to determine the factor causing a flare-up of a diabetic condition and that deceased's diabetic condition could easily have sprung up, if he had never had the accident; that many other factors could have aggravated the diabetic condition. He testified that leukemia is a fatal blood disease, not caused or aggravated by trauma. His testimony is as follows:

"Q. Doctor, now, you have testified that in your opinion the diabetes was aggravated by the accident?

"A. Yes.

"Q. Or alleged accident of May of 1964?

"A. Yes.

"Q. Now, you are not saying that the leukemia was aggravated by the alleged accident of May, 1964, are you?

"A. No.

"Q. In other words, we know even less about what causes leukemia than we do diabetes, isn't that correct?

"A. That's correct.

"Q. And is it true that leukemia is a blood disease?

"A. That's correct.

Q. Solely? Well, not solely, but primarily?

"A. Yes.

Q. And, no doctor of repute believes that leukemia is aggravated by trauma, isn't that correct?

"A. I heaven't found any that will go along with that."

He testified that the diabetic condition contributed to the leukemia of the deceased and hastened his death, but his death could have occurred on August 16, 1964, regardless of any aggravation of the diabetic condition.

The report of Dr. A. B. C. associated with the Tulsa Clinic was filed on behalf of the respondent. Summarized it is as follows: Hyde was admitted to the clinic in May, 1964, and treated for an injury to his little finger. He returned to the clinic for follow-up treatment to the finger on May 26, June 5 and June 9. He made no complaints of back injuries until June 9. A diabetic condition was discovered. Hyde was treated for the condition, and it was easily contained. He was examined on July 21 and July 29, and "was apparently getting along all right." No condition of leukemia was found. Dr. A. B. C. found "that the acute leukemia is in no way connected with the man's original injury" and "that the diabetes mellitus is not connected with his injury"; that acute leukemia in patients like Hyde occurs rather acutely and is extremely serious.

The vital point to be determined here is, "What was the cause of Hyde's death?" There is no dispute about this question. The certificate of death recites the death to have been caused by "Acute circulatory failure, profound anemia, acute lymphacytic leukemia." "Diabetes mellitus" is not listed as a contributing cause of Hyde's death.

Leukemia is defined as: (Lawyers' Medical Cyclopedia Vol. 5 § 38.1, p. 475):

"A malignant neoplasm of the blood-forming tissues or organs (bone marrow or lymph nodes) that is fatal and is characterized by an increase in the number of white cells in the blood stream, anemia and progressive exhaustion."

Leukemia, a malignant blood disease, is not related to trauma and is not caused or aggravated by it. Claimant's doctor so testified. He said, "I haven't found any (doctor) that will go along with that."

In her Form 3-a, claimant represented that the original injury "brought on (a) heart attack". She abandoned this theory at the trial and proceeded on the theory that the accident aggravated a diabetic condition, which, in turn, hastened the death of the deceased. The evidence offered by the claimant is to the effect that no diabetic condition existed at the time of the alleged accident. No medical evidence was offered establishing an existing diabetic condition. We are committed to the rule that where a fact issue as to the cause of an injury can be established only by men skilled in medical science, it must be established by the testimony of such men. Chief Freight Lines, Inc. v. Rines, Okl., 395 P.2d 799; Pittsburgh Plate Glass Co. v. Wade, 197 Okl. 681, 174 P.2d 378; Armour and Company v. Worden, 189 Okl. 106, 114 P.2d 173.

Hyde's diabetic condition was not discovered until almost a month after the alleged accident. It was then in mild form and responded to treatment. Claimant's doctor did not testify that Hyde had a diabetic condition on the date of the accident. His testimony is limited to an opinion that, if the diabetic condition existed, it might have been aggravated by the accident. He admitted that many other factors could have caused the aggravation. Obviously, if the evidence failed to establish the existence of diabetes at the time of the accident, there could be no aggravation.

Claimant's evidence is too remote, indefinite, uncertain, and conflicting to establish that the diabetic conditon of the deceased was aggravated by the accident which occurred on May 13, 1964. See Adams v. Reed Roller Bit Co., Okl., 335 P.2d 1080, syl. 1. Even though the evidence might be deemed sufficient, there is still a vital link missing. The evidence fails to establish the aggravation as being the cause of Hyde's death. According to the testimony of claimant's doctor, the aggravated diabetic condition did not cause Hyde's death, but, at most, merely hastened it. He further testified that leukemia is a fatal disease, and Hyde's death could have occurred at about the same time as it did, without the existence of the diabetic condition.

The evidence is insufficient to establish a casual connection between the death of the deceased and the alleged accident.

We are committed to the rule that where there is an entire absence of competent evidence to support the award of the State Industrial Court, it will be vacated as a matter of law. Ada Coca-Cola Bottling Co. v. Snead, Okl., 364 P.2d 696; Harvey Co. v. Steele, Okl., 347 P.2d 802; Phillips Petroleum Co. v. Eaves, 200 Okl. 21, 190 P.2d 462.

The award of the State Industrial Court is vacated and this cause is remanded to such court with directions to enter an order in favor of the respondent.

All the Justices concur.