Diane and Boyd **LAYTON**, Jr., **Richard and Alice Ruybalid, Sherry Green, Cris Rogers, Tom Gardner, Richard and Melinda Sheriff, Linda and Daniel Carpenter, Jim and Susan Toner, Kevin and Debbie Larson, Ronald and Jane Powell, Glenda and James Horn, and Jim Huggins, Individuals, Plaintiffs,**

v.

**YANKEE CAITHNESS JOINT VENTURE, L.P., and Does I Through X, Defendants.**

**No. CV–N–89–280–HDM.**

United States District Court, D. Nevada.

June 21, 1991.

Kenneth J. McKenna, Robert R. Hager, Hager & Mausert, Reno, Nev., for plaintiffs.

Daniel R. Walsh, Carson City, Nev., for defendants.

## ORDER

McKIBBEN, District Judge.

Plaintiffs, a group of homeowners from Pleasant Valley, Nevada, commenced this nuisance action against Yankee Caithness Joint Venture ("YCJV") seeking damages and injunctive relief. YCJV operates a geothermal power plant several miles from Pleasant Valley. Plaintiffs claim the noise and hydrogen sulfide odor emanating from the YCJV plant constitute nuisances which have caused health problems, polluted the drinking water, diminished the value of their property, and been offensive to the senses. YCJV has moved for summary judgment on all issues.

 A private nuisance is defined as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement 2d, Torts § 821D (1979). In order for a nuisance to be actionable, the invasion must substantially and unreasonably interfere with the use and enjoyment of another person's property. *Jezowski v. City of Reno*, 71 Nev. 233, 286 P.2d 257 (1955). The Restatement echoes this general rule that "one is subject to liability for a private nuisance if, but only if, his conduct ... is either intentional and unreasonable, or unintentional and otherwise actionable" under traditional con-

cepts of tort law. Restatement 2d, Torts § 822 (1979). Plaintiffs argue that YCJV's invasion is both intentional and unreasonable. The court will address each of Plaintiffs' claims according to the nature of the invasion and injury alleged.

## 1. Domestic Wells

■ Plaintiffs originally alleged that water reinjected by YCJV into the ground by the plant was thermally contaminating their wells. They have since conceded that they are unable to meet their burden of proof on this claim. Plaintiffs request that the court dismiss this claim without prejudice. YCJV requests that the claim be dismissed with prejudice. Plaintiffs allege that their inability to provide any evidence of water contamination is a result of the current drought. Plaintiffs have failed to provide the court with any evidence linking their inability to produce evidence in support of this claim to the drought.

Accordingly, Plaintiffs' claims for water contamination are hereby DISMISSED WITH PREJUDICE.

## 2. Chemical Emissions

■ Plaintiffs claim that the YCJV plant emits a wide variety of different noxious gases and chemicals into the atmosphere surrounding Pleasant Valley. Plaintiffs have presented no evidence that the YCJV plant emits any chemicals or gases other than hydrogen sulfide. YCJV admits it emits some hydrogen sulfide but denies that the plant emits any other substances. Washoe County Health Department and Desert Research Institute studies of Pleasant Valley indicate that there are no unusual levels of any of the gases or chemicals complained of by the Plaintiffs. Accordingly, Defendants' motion for summary judgment is hereby GRANTED as to Plaintiffs' claims concerning chemical emissions other than hydrogen sulfide.

Plaintiffs' primary complaint is that the hydrogen sulfide emitted by the YCJV gives off such an intolerable smell that it constitutes a nuisance. Hydrogen sulfide smells like rotten eggs and, if prevalent enough, is very offensive to the sense of smell. YCJV admits that the plant emits some hydrogen sulfide, but contends that it does not emit a sufficient quantity to be perceptible. YCJV also contends that any sulfurous smell that may exist in Pleasant Valley must come from sources other than the YCJV plant. It is well-established that the Pleasant Valley–Steamboat Springs area contains dozens of natural hot springs which emit hydrogen sulfide.

In order to withstand a motion for summary judgment, Plaintiffs must establish that a genuine question of material fact exists. Of course, in considering a motion for summary judgment, this court construes the facts and makes all reasonable inferences in favor of the non-moving party. However, conclusory allegations which find no support in the record will not create a genuine issue of material fact.

■ Plaintiffs have presented no evidence other than their own lay testimony to show that the hydrogen sulfide which is invading their property comes from the YCJV plant. Stated another way, Plaintiffs have failed to present any competent evidence that odors from the YCJV plant have invaded their property at all. Plaintiffs have shown that the YCJV plant emits some hydrogen sulfide and that some hydrogen sulfide is present in the ambient air around their homes. They have failed to show a causative link between the ambient hydrogen sulfide around their homes and any emissions from the YCJV plant. This lack of evidence of causation is fatal to Plaintiffs' claim.

The Pleasant Valley area has long been a geothermally active area, and there are a number of natural sources of hydrogen sulfide other than the YCJV plant. Given that a number of possible sources of hydrogen sulfide exist, the doctrine of res ipsa loquitur is inapplicable. Neither the Plaintiffs nor the court can simply assume that the smell surrounding Plaintiffs' homes emanates from the YCJV plant. Plaintiffs have failed to present sufficient allegations that emissions from the YCJV plant have invaded their property. Without competent scientific evidence that the YCJV plant is the source of the hydrogen sulfide smell

around Plaintiffs' homes, the nuisance action based on emission of hydrogen sulfide must be dismissed.

YCJV has presented this court with extensive and uncontroverted scientific evidence in support of its claims that (a) the odors around Plaintiffs' homes do not originate at the YCJV plant; (b) YCJV's operation of the plant has been entirely reasonable; and (c) any invasion of Plaintiffs' properties attributable to YCJV has been insubstantial.

■ YCJV has met all E.P.A. and Washoe County Health Department standards for the emission of hydrogen sulfide, and has received operating approval from all necessary agencies.[1] The Ambient Air Standard for the State of Nevada for hydrogen sulfide is 80 parts per billion ("ppb"). Washoe County adopted a much stricter standard shortly after the YCJV plant began operations. The new Washoe County standard for ambient hydrogen sulfide emissions is 5 ppb. YCJV has met this new, stricter standard. According to independent monitoring by the Washoe County Health Department and the Desert Research Institute, emissions from the YCJV plant are almost always less than 3 ppb and usually less than 1 ppb.

There is no evidence the emissions from the YCJV plant ever exceeded the Washoe County ambient air standard. Monitors installed in Plaintiffs' yards and maintained by Desert Research Institute measured hydrogen sulfide levels in excess of the standard on only two occasions since the monitors were installed in December of 1987. However, those monitors measure *all* ambient hydrogen sulfide from all sources. Plaintiffs have not shown that those two readings, which measured 7 ppb and 20 ppb, respectively, reflected emissions attributable to YCJV.

Construing all facts and making all reasonable inferences in the light most favorable to Plaintiffs, the court concludes that Plaintiffs have failed adequately to support their allegation that the YCJV plant emits the odors interfering with the use and enjoyment of their property. Accordingly, the motion for summary judgment on Plaintiffs' nuisance action relating to hydrogen sulfide emissions is GRANTED.

*3. Physical Injuries*

Plaintiffs allege the hydrogen sulfide emissions from the YCJV plant have caused them to suffer a variety of medical problems. These ailments include headaches, bloody noses, dizziness, sore throats, coughing, nausea and irritated eyes.

None of the Plaintiffs has offered any medical records or other documentary evidence to show that any of them has even sought medical treatment.[2] Moreover, none of the plaintiffs present any medical testimony linking their injuries with exposure to hydrogen sulfide.

YCJV presents overwhelming scientific evidence that its emissions of hydrogen sulfide are too low to be perceived by humans. YCJV presents the testimony of Dr. Thomas Milby, an expert on the effects of hydrogen sulfide who has done extensive research in this area with such organizations as Stanford University, the National Academy of Sciences and the World Health Organization. His opinion is that "eye irritation, the earliest observed effect consistently associated with [hydrogen sulfide exposure] occurs after several hours exposure ... at concentrations of ... 10,000–20,000 ppb."

In opposition, Plaintiffs' only evidence supporting their claim that the injuries were caused by YCJV's emissions is their own lay testimony.

---

**1.** Compliance with statutory or licensing requirements does not prevent this court from finding that the YCJV plant is a nuisance. However, proof of compliance with all applicable state and county regulations is persuasive, although not dispositive evidence of the reasonableness of YCJV's use of its property.

**2.** Some of the plaintiffs allege that they have seen doctors for the symptoms complained of here. No affidavits, diagnoses or other records from those doctors are part of the record here. Most plaintiffs admit that they have never seen a doctor for the injuries allegedly caused by the plant.

YCJV correctly contends that, in certain cases, expert medical testimony is required in order to prove causation, and that failure to present such evidence can justify dismissal of an action. Causation is an essential element of Plaintiffs' claim for physical injury. "It is well-settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient." *Jones v. Ortho Pharmaceutical Corporation*, 163 Cal.App.3d 396, 209 Cal.Rptr. 456 (Cal.App.1985). Other jurisdictions also follow this principle. "Where a fact issue as to the cause of an injury can be established only by men skilled in medical science, it must be established by the testimony of such men. *City of Tulsa v. State Industrial Court*, 424 P.2d 966 (Okla. 1967). Simply put, where a question of fact is beyond the comprehension of the ordinary lay person, expert testimony is required to prove that fact.

In *Richardson by Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823 (D.C.Cir.1988), *cert. den.* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989), the court ruled that no presumption of causation exists in tort cases; a plaintiff bears the burden of proving causation by a preponderance of the evidence. In *Richardson*, the court found as a matter of law that the plaintiff's single expert witness testimony was insufficient to support a verdict for the plaintiff where all other medical and scientific evidence pointed overwhelmingly to the position taken by the defendant.

Commentators have also recognized that expert testimony is, in some circumstances essential to prove causation. Prosser has stated "expert testimony is required where the question involves medical factors beyond the common knowledge of the layman such that a jury could only indulge in speculation ...". Prosser, on Torts, § 41 236, 241–242 (4th Ed.1971). Headaches, nosebleeds, dizziness and eye irritation may have many causes. Analyzing the toxic effects of exposure to hydrogen sulfide, and diagnosing the cause of headaches, nosebleeds, dizziness and eye irritation are beyond the common knowledge of the lay person. Therefore, expert testimony is required to prove a causal relationship between the hydrogen sulfide from the YCJV plant and the physical injuries suffered by Plaintiffs. The unrefuted evidence in this case shows the absence of causation between the emissions from the plant and Plaintiffs' complaints of physical injuries. Defendants' motion for summary judgment on the physical injury claims is GRANTED.

*4. Noise*

Plaintiffs allege in their complaint that the noise generated by the plant is a nuisance, particularly when the plant goes "off-line" and has to be restarted. The affidavit of one Plaintiff described the noise from the plant as similar to the noise of a steam engine or a train. The affidavit also indicated that the noise has occurred at night and has awakened him. However, all other Plaintiffs either testified at deposition or conceded through counsel at oral argument that noise from the plant has not been a substantial problem. Insubstantial problems do not constitute nuisances.

YCJV has complied with all relevant Washoe County rules, regulations and laws governing noise output. Plaintiffs do not dispute this. It is clear from the affidavits and deposition testimony of virtually every person in this case that the noise created by the YCJV plant does not constitute a nuisance. Plaintiff Thomas Gardner maintains the noise substantially and unreasonably interferes with his enjoyment of his property. Exceptionally sensitive plaintiffs cannot recover for a nuisance which does not cause a "significant harm, of a kind that would be suffered by a normal person in the community." Restatement 2d, Torts § 821F (1979). Any injury suffered by Mr. Gardner is due to his unusual sensitivity to noise. The law holds YCJV to the standards of normal persons in the locality. It is undisputed that YCJV's conduct satisfies that standard. Accordingly, Defendant's motion for summary judgment as to Plaintiffs' nuisance claim based on noise is hereby GRANTED.

### 5. Property Devaluation

 Plaintiffs' allege that their property has decreased in value as a result of the operation of the YCJV plant. YCJV correctly contends that Plaintiffs are not entitled to compensation for lowered property values, even if caused by the proximity of the YCJV plant without first establishing that the plant constitutes a nuisance. *Miller v. Jasinski*, 17 Ark.App. 131, 705 S.W.2d 442 (Ark.App.1986).

Accordingly, YCJV's motion for summary judgment on Plaintiffs' claims for diminution in property value is GRANTED.

It is so ORDERED.