ADA COCA–COLA BOTTLING COMPANY and Equity Mutual Insurance Company, Petitioners,

v.

STATE INDUSTRIAL COMMISSION and Orville Snead, Respondents.

No. 38356.

Supreme Court of Oklahoma.

June 16, 1959.

Rehearing Denied July 14, 1959.

Kerr Lambert, Conn & Roberts, by R. Burl Harris, Ada, for petitioners.

Willoughby & Cannon, Ada, Mac Q. Williamson, Atty. Gen., for respondents.

IRWIN, Justice.

On July 3, 1957, Orville Snead, hereinafter referred to as claimant, filed a claim for compensation against Ada Coca-Cola Bottling Company and its insurance carrier, Equity Mutual Insurance Company, referred to as petitioners herein, stating that on January 7, 1957, while in the employ of petitioner, Ada Coca-Cola Bottling Company, he sustained an accidental injury consisting of loss of vision in both eyes and injury to his cervical spine, causing the loss of use of his left hand and shoulder. The injury occurred when he tripped over a pallet of cokes and fell to the floor.

The trial judge at the close of the evidence found:

"That claimant sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above named respondent, on January 7, 1957, consisting of injury to his head and right leg, resulting in loss of vision in both eyes to the extent of industrial blindness and partial loss of use of left arm and shoulder.

"That at the time of said injury, claimant's wages were sufficient to fix his rate of compensation at $28.00 per week.

"That claimant sustained permanent and total disability as a result of said injury, which resulted in claimant's industrial blindness and loss of use of his left arm, and is entitled to compensation for 500 weeks at $28.00 per week, or the total amount of $14,000.00, of which 65 weeks have accrued from January 26, 1957, when said injury became disabling, to April 27, 1958, and shall be paid in a lump sum of $1820.00, balance of award to be paid at the rate of $28.00 per week."

The trial judge upon such findings awarded claimant compensation in the sum of $14,000, which was sustained on appeal to the Commission en banc.

Petitioners bring the case here for review, and contend there is no competent evidence reasonably tending to support the award for permanent total disability as a result of claimant's industrial blindness and loss of use of his left arm caused by the accident on January 7, 1957.

It was stipulated at the hearing that respondent (claimant) was in the course of his employment with Ada Coca-Cola Bottling Company on the date he claimed to have sustained his injury and that he reported such injury to his employer stating that he had sustained a personal injury to the left side of his head in the region of his left eye and left forehead and that claimant's employment was hazardous within the meaning of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq.

The evidence discloses that claimant was 80 years old on January 7, 1957, when the injury occurred, and that he previously had two amputations of his left leg below the knee and suffered a heart attack in 1952. That claimant's family doctor treated him for the abrasions suffered as a result of the last injury; that he continued to work and lost no time from his employment until January 26, 1957, and on that date, while he was still in bed, he suffered a stroke and has been unable to work since that time.

It was not contended nor was there any evidence adduced that claimant was disabled from performing ordinary manual labor as a result of the injury suffered January 7, 1957, prior to the stroke on January 26, 1957, and the commission found "That claimant sustained permanent and total disability as a result of said injury, which resulted in claimant's industrial blindness and loss of use of his left arm, and is entitled to compensation * * * from January 26, 1957, when said injury became disabling." Inasmuch as the injury upon which claimant predicates his claim, became disabling on January 26, 1957, the sole question to be resolved is: Was the stroke suffered by claimant on January 26, 1957, causing the permanent disability, a result of or related to the injuries suffered January 7, 1957?

■ The claimant testified at the hearing and the only medical evidence upon which the commission could base its finding was on the testimony of Dr. F. The first time Dr. F. ever examined the claimant was on May 1, 1957, approximately 113 days after the accident on January 7, 1957. His knowledge of claimant's physical condition, and what had transpired prior to May 1, 1957, the date he first examined claimant was what claimant told him.

Dr. F. testified claimant had a marked decrease in visual acuity, which on checking against the Sneller Chart, was 20/400 in the left eye, and 20/200 in the right eye. He further testified that claimant also sustained an injury to his left arm and shoulder and that he was then unable to do ordinary manual labor and that such condition could have been caused by injuries sustained by claimant on January 7, 1957. However, Dr. F.'s testimony that the stroke could have been a result of the fall was nullified when asked the following question by the trial commissioner.

"Court:

"With the history that you got and the examination that you have made, is it your opinion that the injury he sustained in his fall thereon January 7, 1957, caused the condition that occurred there on January 26, 1957?"

Dr. F. answered: "I can't answer that." and in Dr. F.'s medical statement filed in the case he stated:

"Impression:

"1. Decrease in perception of left arm, *etiology undetermined*. 2. Marked decrease visual acuity with degeneration of optic nerve head, *etiology undetermined*. 3. Atrophic arthritis cevical spine and right shoulder. The above findings of left arm *could be* on the basis of a cervical disc or an

injury to the cervical nerve roots involved in the brachial plexus and *could be* the result of the above described injury. The decreased visual acuity on the basis of optic nerve *could also be* on the basis of a contusion with hemorrhage into the optic chiasma."

Refuting the testimony of Dr. F., who examined claimant for the first time 113 days after the injury, was the positive testimony of two doctors, (one being the family doctor of claimant) who examined the claimant immediately after the fall on January 7, 1957, and after the stroke.

Dr. P., an eye, ear, nose and throat specialist, by deposition testified that he examined claimant the day after the accident and fitted him with glasses, did a refraction job and he then had normal vision in both eyes with his lenses. That he examined him again on March 27, 1957, about two months after the stroke and that claimant had a definite loss of vision, being 20/40 at that time with glasses and 20/60 without glasses. He had a left hemianopsia, in which his left field of vision was lacking, and a numbness involving the left side of the body. Dr. P. further testified that in his opinion "claimant had no disability in March of loss of vision, as a result of the accident of January 7, 1957." In Dr. P.'s written report based on the March 27, 1957 examination, he stated:

"* * * At present both of eyes show a slight degree of lens changes which may go on to cataracts, but this is not unusual for a man of his age. I found no hemorrhage in the eye, and no injury to the eye as a result of his fall. While his vision at this time is not normal, it is my feeling that any trouble he is having with his eyes is due to his age, and as a result of his stroke."

Dr. M. by deposition testified that he first treated claimant in 1952, for an acute coronary thrombosis and he had been a regular patient of his since that time. That he examined claimant on January 9, 1957, two days after the injury and he had a bruised spot and an abrasion over his left eye and a mild abrasion of his left nostril and abrasion of his right shin, and some edema of the right foot and leg. That claimant's reflexes were in good condition and there was no evidence of brain damage or cerebral accident of any kind. That he examined claimant five times after the examination January 9, before the stroke on January 26, and it was his opinion at that time there would be no permanent disability as result of the accident January 7. That he examined him on the morning of the stroke and several times after that. The following is part of his testimony.

"Question: Doctor, in your opinion, was this stroke which you have described here and which occurred in the night of the twenty-fifth or the early morning of the twenty-sixth of January, 1957, is that in any way in your opinion, related to his fall which occurred on or about the seventh of January, 1957?

"Answer: In my opinion it is not, no."

We have consistently held that we will not review conflicting evidence and determine its weight and value, and will not disturb an award if there is any competent evidence tending to support it. However, when an award of the State Industrial Commission is based on a material finding of fact, unsupported by competent evidence, we will vacate the award as a matter of law. There being no competent evidence that the stroke suffered by claimant on January 26, 1957, which caused the permanent disability, was a result of or related to the injuries suffered by him on January 7, 1957, the award entered by the commission is therefore vacated.

WELCH, HALLEY, JACKSON and BERRY, JJ., concur.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON and BLACKBIRD, JJ., dissent.