GARR–WOOLEY OIL COMPANY, and Employers Mutual Liability Insurance Company of Wisconsin, Petitioners,

v.

Lawrence T. YEARGIN, and The State Industrial Court of the State of Oklahoma, Respondents.

No. 38808.

Supreme Court of Oklahoma.

Sept. 13, 1960.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, for petitioners.

Howard C. Triggs, Oklahoma City, Mac Q. Williamson, Attorney General, for respondents.

JACKSON, Justice.

Petitioners Garr-Wooley Oil Company and its insurance carrier appeal from a final order of the State Industrial Court awarding claimant Lawrence T. Yeargin compensation for temporary total and permanent partial disability found to have resulted from the inhalation of noxious chemical fumes by claimant on April 19, 1957, while employed as a derrick man for petitioner Garr-Wooley Oil Company.

Petitioners assert two propositions: (1) The evidence is insufficient to support the finding that the claimant was temporarily totally disabled during the period found by the court, and (2) the evidence is insufficient to support the finding that claimant sustained any permanent partial disability as a result of his alleged exposure to chemical fumes, or that he sustained an accidental injury.

The second contention presents the decisive issue, which is whether there is any competent medical evidence of causal connection between the inhalation of chemical fumes by claimant and the disability for which compensation was awarded.

The disability was of such character as to require the testimony of skilled and professional persons to establish its cause, nature and extent.

The medical evidence introduced by claimant consisted of two letter-reports and deposition testimony of Dr. M., who physically examined claimant on June 9, 1958, and reviewed x-rays made by other doctors on May 31, 1957 and June 6, 1957. Dr. M. did not take any x-rays of his own.

Dr. M. stated in his report of June 14, 1958, as follows:

"Diagnoses: (1) Pneumonitis of undetermined etiology involving the right middle lobe. (2) Cyst in the right lower lobe.

"Discussion: I am not prepared to say just what effect the inhalation of fumes to which this man was subjected in April 1957 would have on the lungs. I assume that he was working in the open and unless he was facing the direction in which the wind was blowing I would feel that perhaps little damage to the mucous membrane of the bronchi and lungs would occur, although some individuals seem to be more sensitive to noxious fumes than others. This man had an x-ray of his chest made at the Oklahoma County Health Association September 23, 1956, which was reported to be normal. At the present time he does have some pathology involving the right middle and lower lobes of the right lung and the history indicates that he probably had a pneumonitis secondary to the inhalation of fumes from caustic soda etc. in April 1957, which has produced what appears to be a residual pneumonitis or fibrosis and cystic changes in the right lung."

Dr. M's report of July 10, 1958, is, as follows:

"This is a supplemental report to be added to the previous report of June 14, 1958.

"Mr. Yeargin reports that he has had several jobs in the oil field during the past several weeks and has been unable to continue working for a very long period because of cough, weakness and

shortness of breath. As stated previously it is impossible for me to state the exact cause of the condition involving the middle and lower lobes of his right lung. Often times such a condition is secondary to infection and it might also result from various types of conditions that produce irritation in the lung or lungs.

"It is my opinion that this condition has produced approximately a 35% disability and he will probably have to seek some other type of employment which does not require strenuous manual labor."

On cross-examination, in answer to a question whether his testimony was based upon his own physical examination of claimant or otherwise, Dr. M. replied:

"A. Well, it's based on the x-ray findings and then what he said. I did not find anything."

It is noted that Dr. M. assumed that the x-ray taken September 23, 1956 (prior to alleged inhalation of fumes by claimant) was normal.

Dr. C., whose reports were introduced on behalf of petitioners, stated, in his report of August 13, 1957, as follows:

"Previous x-rays which had been taken on the patient were obtained. A mobile unit film dated September 25, 1954, showed a perfectly clear radiograph. The radiograph again dated September 23, 1956 showed some increased markings in the lower third of the right lung field, some tenting of the right diaphragm and obliteration of the right costophrenic angle. X-rays taken by Dr. (F.) on May 3, 1957, a film taken May 31, 1957 by Dr. (J. C.) and the film taken by ourselves on August 5, 1957 have shown no difference as compared to the film taken September 23, 1956. In other words, any radiograph change which occurred had appeared in the interim between September 25, 1954 and September 23, 1956 rather than subsequent to that time."

"* * * * *

"My evaluation of the patient is that he has had an old inflammatory process involving the lower portion of the right lung with some evident scarring in this area. There has been no acute or recent process. Furthermore, I believe the patient has some evidence of emphysema and some ventilatory obstruction. These latter findings are mild to moderate and apparently are not disabling for ordinary activity or employment. Certainly, we have evidence that the radiographic changes are not produced by his exposure to any chemicals during April, 1957. Whether he sustained any permanent damage to his lungs as a result of this exposure seems improbable." (Emphasis supplied.)

On cross-examination, Dr. M. (claimant's medical witness) further testified, as follows:

"Q. Now, if Dr. (C's) interpretation is to the effect that any changes in the x-rays or radiographs have appeared in the interim of September the 5th, 1954, and September the 23rd, 1956, rather than subsequent to that time, *would it then be your opinion, doctor, that the condition from which you found Mr. Yeargin to be suffering pre-existed any alleged exposure in April of 1957?*

"A. *If it showed in those films, yes. Like I said before, I would have no way of knowing how long it might have been present before these x-rays that I had an opportunity to see.* (Emphasis supplied.)

And, in response to a hypothetical question by counsel for petitioners, Dr. M. stated:

"A. It is not my opinion that this man was or is totally and permanently disabled; and actually *I don't know just how much—whether in—whether*

*this inhalation of the fumes had anything to do with his present disability or not.* I made that statement and in my opinion in this last report that I gave, which I estimated that 35 per cent disability was due chiefly to the fact that this fellow had had several jobs and he said he could not hold them—that he would work for a few days and then he would get short of breath and then he would start coughing or something to that effect, and he would have to quit those jobs. So my opinion in that last report was more on the man's statement of what he told of what he had been able to do." (Emphasis supplied.)

In Ada Coca-Cola Bottling Co. v. State Industrial Commission, Okl., 341 P.2d 568, 570, claimant's only medical witness, after stating that the condition of disability which he found in claimant could have been caused by the alleged accidental injury, testified, in reply to a question by the court, as follows:

"Q. With the history that you got and the examination that you have made, is it your opinion that the injury he sustained in his fall there on January 7, 1957, caused the condition that occurred there on January 26, 1957?

"A. I can't answer that."

In the doctor's report filed in that case, he further stated that the etiology was undetermined. We concluded that the quoted testimony by the doctor nullified his opinion that the disability found could have been caused by the alleged accidental injury, and vacated the award, as being unsupported by competent evidence.

 In Adams v. Reed Roller Bit Co. et al., Okl., 335 P.2d 1080, 1081, we held, in the second paragraph of the syllabus:

"A finding of the Industrial Commission based solely on indefinite, equivocal, ambiguous and inconsistent medical proof will not sustain an award based thereon."

We are of the opinion that the above-quoted testimony of claimant's medical witness on cross-examination destroyed the probative value of his previous letter-reports.

 We conclude that there is no competent medical evidence in support of the finding that the disability for which compensation was awarded was attributable, in whole or in part, to the alleged inhalation of chemical fumes by claimant in April, 1957. G. T. Harvey Co. v. Steele, Okl., 347 P.2d 802; Ada Coca-Cola Bottling Co. v. State Industrial Commission, supra; Taton v. Dunlap, 184 Okl. 319, 87 P.2d 321.

Order vacated, without prejudice to further proceedings.

WILLIAMS, V. C. J. and WELCH, HALLEY, JOHNSON, BLACKBIRD, IRWIN, and BERRY, JJ., concur.