The STAR PRINTERY COMPANY and Commercial Standard Insurance Co., Petitioners,

v.

Euel PITMAN and State Industrial Court, Respondents.

No. 39924.

Supreme Court of Oklahoma.

Sept. 18, 1962.

Covington & Gibbon, Tulsa, for petitioners.

R. Forney Sandlin and Harold R. Shoemake, Muskogee, for respondents.

BERRY, Justice.

Employer challenges, as erroneous and lacking evidentiary basis, the trial tribunal's finding which attributes claimant's disability to chronic lead poisoning—an occupational disease enumerated in 85 O.S.1961 § 3, subd. 16(16).

While engaged in employer's printing plant at Muskogee between 1951 and 1959, claimant was regularly assigned to operate

a linotype machine equipped with a "mort mill" which was described as a pot used for melting lead, zinc and other metals into "slugs" or molds. It was claimant's daily duty to "clean out" the mort mill, remove "dust and dirt and stuff that accumulates" in it and place these deposits in a barrel while still hot and smoking. In so doing claimant was required to stand directly over the melting pot for a period of thirty minutes each day and inhale fumes emanating from the hot metal. The printing shop consisted of one room, 10–12 feet high; the other dimensions are not disclosed by the record. No ventilation system was present except an exhaust fan used only in the summer. There were two windows and a door.

Claimant has not been at work since December 18, 1959. Upon his return home on that day he was unable to move his arms and legs and noticed tarry bowels, as well as bleeding from the left nostril. The following morning he was admitted to the "VA" Hospital at Muskogee, where he remained until February 9, 1960. Discharged with a diagnosis of chronic lead poisoning, he continued treatment under the out-patient care of Dr. K, an internist.

The primary issue formed in the proceeding below related to the cause of claimant's disability. The medical evidence consists of three letter-reports. For the claimant, Drs. M & K related that his condition was attributable to chronic lead poisoning. This diagnosis was reached upon certain characteristic clinical manifestations and blood analysis for "serum lead level", coupled with claimant's history of "contact with tin, lead and other metals in his occupation as a linotype operator". The conclusion of Drs. M & K was disputed by Dr. L, in whose opinion claimant's symptoms were due to a peptic ulcer which "cannot be demonstrated by x-ray".

Employer asserts error in the trial tribunal's determination attributing claimant's disabling condition to lead poisoning from occupational exposure. It is argued that: (a) claimant's disability resulted from a condition for which he had been previously compensated pursuant to a joint petition settlement with the employer; (b) the award rests on inconsistent and equivocal medical evidence which lacks probative value; (c) the evidence adduced fails to disclose, by means of an air pollution test, the presence of lead contamination in employer's plant; (d) the trial tribunal's award lacks an essential finding that claimant's condition was not due to the recurrence of a prior accidental injury for which he had been fully compensated.

According to the record, claimant was a healthy individual who "has never been sick or disabled in any way" until September 30, 1958, when he suffered a gastro-intestinal hemorrhage. He was admitted to the VA hospital with "a tentative diagnosis of possible" duodenal or gastric ulcer "though x-ray series had never specifically" so demonstrated. Dr. W, a private physician, felt "entirely possible and quite probable" that the episode of hemorrhage was due to work-connected physical strain suffered by claimant on that day while "shoving" an automobile in employer's parking lot. On the basis of Dr. W's report claimant entered into a joint-petition settlement with the employer, receiving $500.00 for his injury. So far as the record discloses, claimant did not sustain any permanent disability from the injury on September 30, 1958. He was able to and did return to his job at the printing plant, where he remained in regular and continuous employment until the episode of December 18, 1959. It is not disputed that since December 18, 1959, claimant has been permanently partially disabled for manual labor.

Insisting that both on September 30, 1958 and on December 18, 1959, claimant suffered from a gastric hemorrhage, employer urges us to view the second episode as a mere recurrence of the first and to hold, as a matter of law, that claimant's recovery under the present claim was barred by the prior settlement in full for $500.00.

■ Neither the joint petition nor the order approving the settlement made therein appears in the record before us. However,

since claimant does not dispute that such order was in fact entered, we will assume for the purpose of our discussion that one was made and that the settlement did cover both temporary and permanent disability from the strain occurring on September 30, 1958. See, in this connection, Seven-Up Bottling Company of Ada v. Standifer, Okl., 318 P.2d 852, 854; Independent Oil & Gas Co. et al. v. Mooney et al., 187 Okl. 472, 103 P.2d 557, 559.

The similarity, or even identity, of symptoms manifesting themselves after each of two successive injuries does not establish, as a matter of law, that the disability from the second episode was in truth and in fact but a recurrence of the first injury. Notwithstanding such resemblance, the question remained essentially one of science and must be resolved, as any other disputed issue of causation, from the expert testimony adduced.

■ Whether employee's disability resulted from a recurrence of his prior accidental injury, a pre-existing non-compensable pathology, or from a distinct and independent occupational disease (for which compensation is sought), presents a question of fact to be determined by the State Industrial Court, whose finding on such issue will not be disturbed on review if supported by competent medical evidence. Ideal Cement Co. v. Buckler, Okl., 353 P.2d 828, 831; Hall v. Howard Johnson of Oklahoma, Inc., Okl., 297 P.2d 560; Bartlett-Collins Co. v. Alspaw, Okl., 325 P.2d 1068, 1070; Skelly Oil Co. v. State Industrial Commission, Okl., 311 P.2d 810.

Neither Dr. M nor Dr. K, who submitted their letter-reports for the claimant, viewed the two episodes of internal bleeding as inter-connected or attributable to the same cause. To the contrary, both physicians entertained the opinion that the manifestations and disability present after December 18, 1959, were solely due to chronic lead poisoning. There is, therefore, competent evidence to show that claimant's incapacity for which compensation was claimed resulted from a cause distinct and independent

from the physical strain sustained by him on September 30, 1958.

While nowhere in his report did Dr. M expressly state that lead poisoning was caused by work-connected exposure, he did indicate knowledge of claimant's occupational contact with lead components and the import of his evaluation clearly attributes the toxic condition thereto.

■ A physician's opinion need not be given in categorical terms nor in the precise language of the statute, and an award rests on competent evidence when it is supported by the general tenor and intent of the medical testimony in the record. Oklahoma Gas & Electric Co. v. State Industrial Court, Okl., 366 P.2d 609, 613.

Our decisions in Adams v. Reed Roller Bit Co., Okl., 335 P.2d 1080, 1081; Ada Coca-Cola Bottling Co. v. State Industrial Commission, Okl., 341 P.2d 568; and Garr-Wooley Oil Co. v. Yeargin, Okl., 355 P.2d 410, are not applicable to the case at bar. In the cited cases the physical findings of the medical expert were either patently inconsistent with his conclusion, or the doctor gave two irreconcilably contradictory views as to causation and predicated them on identical medical facts. See Special Indemnity Fund v. Beller, Okl., 369 P.2d 184, 187.

■ Although the evidence does not disclose, by means of an air pollution test, the exact level of lead contamination at employer's printing plant, the absence of such showing is not fatal to claimant's recovery. The pathogenic nature of toxic agents enumerated in 85 O.S.1961 § 3, subd. 16, must be determined by their harmful effect on human organism rather than by the quantity of noxious substance present. National Zinc Co. et al. v. Hainline, Okl., 360 P.2d 236, 240.

■ Lastly, employer urges that the trial tribunal was required to make a specific finding upon the issue of whether the second episode of bleeding constituted a recurrence of the prior one. We cannot accede to this view. The trial tribunal's de-

termination attributed claimant's disability to chronic lead poisoning. It necessarily comprised within its terms a finding which negated all other theories of causation inconsistent therewith. Standard Roofing & Material Co. v. Mosley et al., 176 Okl. 517, 56 P.2d 847; Amerada Petroleum Corporation v. White et al., 179 Okl. 82, 64 P.2d 660, 663; Chapman et al. v. Selby et al., 192 Okl. 399, 136 P.2d 934, 937; Special Indemnity Fund v. Beller, supra.

The proceeding is free from error of law and the challenged finding rests on competent evidence. Award sustained.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON, JACKSON and IRWIN, JJ., concur.