Jerry BYERS, Petitioner,

v.

CREECO MILL & ELEVATOR COMPANY,
State Insurance Fund and the State In-
dustrial Court of the State of Oklahoma,
Respondents.

No. 39648.

Supreme Court of Oklahoma.

Nov. 5, 1963.

Rehearing Denied Jan. 14, 1964.

Edgar B. Maggi, Bristow, George H.
Jennings, Sapulpa, for petitioner.

Mont R. Powell, Moraul Bosonetto, Okla-
homa City, Charles R. Nesbitt, Atty. Gen.,
for respondents.

John B. McCaleb, of Fenton, Fenton,
Smith & McCaleb, George E. Fisher, Okla-
homa City, amici curiae.

HALLEY, Vice Chief Justice.

Claimant, Jerry Byers, was employed by
Creeco Mill and Elevator Company, a part-
nership, hereafter called employer, when on
December 29, 1959, he suffered a paralytic
stroke on the job. His duties as a "mill
hand" consisted generally of long hours and
hard work which is unnecessary to detail
here. The issue in this matter is whether
the order denying an award to claimant is
sustained by any competent evidence. A
judge of the trial court found that "Claim-
ant's disability is due solely to a paralytic
stroke resulting from pre-existing vascular
disease and natural causes and is in no
manner due to any accidental injury sus-
tained while in the employment of the re-
spondent." Claimant seeks a review of
that finding and the order based thereon
denying an award.

Claimant's medical evidence consisted of two letter reports, one each, by Drs. J. and N. Dr. J. stated that the strain of the hard work, heavy lifting and long hours were a contributory factor in causing hypertension and subsequent cerebral hemorrhage. Dr. N. stated that claimant's work was a contributing factor in the production of his stroke.

Thus the issue was not whether his work was the sole cause of injury but the issue was more narrowly drawn as to whether the claimant's work in any way contributed to causing his stroke and resulting total disability.

Employer's evidence in chief on this issue consisted of a letter report by Dr. D. who concluded his report with the following statements: "This is a disease due to natural causes; that is, arteriosclerosis of the blood vessels and high blood pressure. It is certainly not to be considered as an injury or accident, nor is it occupational, nor is it the result of the work that he was doing. *He was doing ordinary manual labor* that he had done all his life, *and this had nothing at all to do with his stroke*." (emphasis ours)

From this report we see that employer has met the burden of presenting some competent medical evidence that claimant's work did not in any way contribute to the cause of claimant's stroke and disability.

█ The rule of law which we have followed through the years is found in our holding in Sanders v. State Industrial Commission, Okl., 331 P.2d 478:

"Whether disability is due to compensable injury or other cause is a question of fact for the determination of the State Industrial Commission in a hearing on this question, and this court will not disturb the finding made by said commission thereon if there is any competent evidence reasonably tending to support said finding."

But, claimant contends that Dr. D.'s report should have been rejected by the trial tribunal for either of two reasons. First,

claimant argues that the report of Dr. D. was based upon an incomplete and inaccurate history. Second, claimant argues that the testimony of Dr. D. on cross-examination was so inconsistent with his written report as to destroy the probative value of his written report. We will take up these arguments in order.

Claimant first cites and quotes from Acme Flour Mills v. Bray, 185 Okl. 516, 94 P.2d·828, wherein we held:

"Testimony of an expert witness based upon a history admittedly incomplete and inaccurate has no probative value."

"Where an award of the State Industrial Commission is based upon material findings of fact which are unsupported by any competent evidence, this court, on review, will vacate such award as a matter of law."

█ In the Bray case, supra, claimant strained himself. His employer sent him to a physician who found that he was suffering from an acute attack of gonorrhea with accompanying epididymitis (an inflammation of the epididymis—an elongated mass at the back of the testicles composed chiefly of the convoluted efferent tubes of that organ); that an operation was indicated for relief of this diseased condition and such operation was performed. The trial tribunal found that claimant sustained an injury to the groin. Claimant's only medical evidence was a report from a doctor he went to see several months after the operation. Claimant withheld from his doctor the fact of the acute attack of gonorrhea. His doctor's opinion was that claimant had sustained a strain involving the cord and vessels of the scrotum necessitating an operation resulting in permanent partial disability. The witness did not testify that claimant had an injury to the groin as found by the trial tribunal. The witness's opinion was based entirely on the history given by claimant which did not completely, correctly and fully advise him with respect to claimant's condition at the time of his alleged injury.

The instant case is not such a case and therefore the rule of law set out above is not applicable. Claimant insists that Dr. D. failed to receive claimant's history of a high blood pressure reading immediately after he suffered the stroke and that he failed to obtain information concerning the strenuous nature of claimant's work. The record does not sustain these assertions. Dr. D. took claimant's history from him and his mother. They said that prior to the stroke he was in good health and had never been sick before. They told him that his blood pressure was over 200 when it was taken at the hospital after the stroke. Claimant's medical witness had reported it to be 230. Each of these is a higher than normal reading. Dr. D. testified that a stroke victim's blood pressure may either go up or down immediately after a stroke. The reading taken at that time was not significant to his conclusions because it does not give any indication of what his blood pressure was just before the stroke. On the other point, on cross-examination Dr. D. testified that claimant and his mother told him that claimant was unloading and shoveling oats which was the usual work he had been doing for several years which he characterized in his report as "ordinary manual labor." Thus the blood pressure reading and claimant's work were sufficiently explained and made known to Dr. D. and he properly took them into account in reaching his medical conclusions.

Claimant's second argument, as we mentioned above, is based on our holding in Garr-Wooley Oil Company v. Yeargin, Okl., 355 P.2d 410:

"Where disability for which compensation is sought under provisions of Workmen's Compensation Act is of such character as to require testimony of skilled professional persons to determine its nature, extent and causal connection with alleged accidental injury, an order awarding compensation which is based solely on indefinite, equivocal, ambiguous or inconsistent medical evidence is not supported by competent evidence, and will be vacated by Supreme Court on review."

In the cited case claimant's medical witness submitted letter reports that claimant probably had a pneumonitis of the lungs secondary to the inhalation of fumes from caustic soda in April, 1957, which showed up in x-rays made in May and June, 1957. He further stated that claimant had an x-ray of his chest made in September, 1956, which was reported to be normal. On cross-examination, he admitted that he had not seen the x-rays made in 1956, and that if the same condition was present in the 1956 x-rays as was present in the 1957 x-rays (which fact was testified by employer's medical witness), then he would agree that claimant's condition pre-existed the alleged exposure in April, 1957. He also testified that he did not know whether the inhalation of fumes had anything to do with his present disability or not. Such equivocal and indefinite testimony is subject to the rule set out above.

■ However, in the instant case the employer's medical witness did not recant upon cross-examination from the clear position he took in his letter report wherein he said that claimant's work had nothing at all to do with his stroke. It is true that Dr. D. did not on cross-examination answer each and every question with as direct an answer as claimant would now desire. But claimant accepted the answers at the time of the hearing and did not request that the judge require the witness to answer the questions more directly. On re-direct examination Dr. D. made his position plain. He was asked whether claimant's work caused or contributed to the stroke. He answered that in his opinion the work was not the precipitating factor in claimant's stroke. We are of the conviction that Dr. D.'s testimony was not indefinite, equivocal, ambiguous or inconsistent. The order denying the award is supported by competent medical evidence and must be sustained upon review. Sanders v. State Industrial Commission, supra.

Order denying award sustained.

WELCH, DAVISON, JACKSON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, C. J., and JOHNSON and WILLIAMS, JJ., dissent.

WILLIAMS, Justice (dissenting):

I am unable to agree with the majority opinion.

It is my conclusion that the effect of the majority holding is that medical testimony to the effect that claimant's condition was not *caused* by his work is sufficient to sustain an order of the State Industrial Court denying an award to such claimant. Such a determination does not decide the basic issue here involved, which is whether or not there was any evidence that the claimant's work did not *aggravate* or accelerate an admitted latent pre-disposing condition.

If a workman's physical structure gives way under stress of his usual labor which aggravates or accelerates a latent pre-disposing condition, such injured workman nevertheless may be entitled to compensation for the entire disability resulting from the cumulative effect of work-connected strain combined with underlying illness. See Patrick & Tillman Drilling Co. v. Gentry, 156 Okl. 142, 9 P.2d 921; B & W Truck Service v. Cline, Okl., 368 P.2d 499; Truck & Trailer Sales & Service v. Davis, Okl., 372 P.2d 612.

In the case of Ben Hur Coal Co. v. Orum, Okl., 366 P.2d 919, his Court affirmed an award for death benefits. In such case, there was no testimony that the deceased employee sustained a strain. The facts were that the employee on the date of his death had performed his usual work as a miner, admittedly strenuous, and while crawling out of the mine slumped to the ground and there died without making any statement.

The order denying an award herein rests solely on the testimony of Dr. D. In the opinion of this physician, "the work was not the *precipitating* factor in his (claimant's) stroke". Said doctor further testified "its purely speculative to say that the physical exertion caused him to have a stroke". (Emphasis supplied.)

Although counsel sought to elicit such doctor's opinion as to whether exertion attendant upon claimant's labor did contribute to his stroke, the witness gave no answer directly responsive. However, neither the tenor, nor content, of Dr. D.'s testimony seeks to exclude the element of claimant's work as a factor *contributing to* the cerebral stroke. On the contrary, such witness conceded that in the case of hypertensive individual, he "would caution him about his exertion." He added that the exertion of doing work "doesn't *cause the condition* in the blood vessels, but it puts more strain on the brain and on blood vessels." (Emphasis supplied.)

It appears that Dr. D. desired and attempted to confine the effect of his testimony to simply and only demonstrating a definite causal relation between pre-existing hypertension and cerebral stroke. The existence of that relation stood admitted and was not in dispute. When the doctor failed to consider the question of and give an opinion as to whether claimant's work may have contributed to the stroke by aggravating the underlying dormant vascular pathology, and heightening his blood pressure, he, in effect, ignored the crucial issue under inquiry. In short, his testimony appears to have been self-directed and deflected from the one point material to the factual controversy in the proceeding. An example of such is set out in the opinion of the majority as follows:

"He (Dr. D.) was asked whether claimant's work caused or contributed to the stroke. He answered that in his opinion the work was not the *precipitating factor* in claimant's stroke." (Emphasis supplied.)

Dr. D. was not asked whether or not the work was the *precipitating factor* but was asked whether or not claimant's work *contributed to the stroke*. Such latter question he did not answer.

So far as the record disclosed, Dr. D. expressed no opinion directly bearing on

# 480

the question of whether claimant's work-connected three-year period of long and hard daily exertion under the circumstances of this case contributed to his cerebral stroke by aggravating or accelerating a latent pre-disposing condition.

A denial of an award by the State Industrial Court based solely on indefinite, equivocal, ambiguous and inconsistent medical proof should not be sustained. Adams v. Reed Roller Bit Co., Okl., 335 P.2d 1080.

As set forth in the majority opinion, Dr. D. in his letter report stated: "He (claimant) was doing ordinary manual labor that *he had done all of his life.*" Such statement would seem to infer that claimant's work had no causal relation with his cerebral stroke in that he was not doing anything unusually strenuous. (Emphasis supplied.)

In the case of Kelley v. Enid Terminal Elevators, Okl., 372 P.2d 589, this Court vacated an order of the State Industrial Court for the reason that said order of denial was based on the fact that the claimant was performing no unusually heavy or strenuous work on the date of the alleged accident which could have caused and precipitated the heart attack. In such opinion we held that the strain induced by the effort expended in performing labor may alone constitute accidental injury even though sustained while the work is done in the normal manner required in the performance of ordinary duties and without the occurrence of an untoward incident connected therewith.

Since the effect of the majority opinion is to approve an order denying an award based solely upon the testimony of Dr. D. and it in turn is based on an improper requirement, i. e., unusually strenuous work, and does not consider whether or not claimant's work contributed to his stroke by aggravating or accelerating his latent pre-disposing condition, I respectfully dissent.