E. G. MOSS, Petitioner,

v.

STATE HIGHWAY DEPARTMENT, State Insurance Fund, and State Industrial Court of the State of Oklahoma, Respondents.

No. 40454.

Supreme Court of Oklahoma.

June 23, 1964.

Marx Childers, Oklahoma City, for petitioner.

Mont R. Powell, Guy Secor, Oklahoma City, for respondents.

BLACKBIRD, Chief Justice.

In the Form 3 claimant filed in the State Industrial Court to commence the proceedings herein reviewed, he stated that while working as an employee of the respondent, State Highway Department, on Highway 19 in Grady County, on August 3, 1961, he suffered an accidental injury to his heart from "physical strain in severe heat * * *".

At the hearing in that court it was established that claimant had had arteriosclerosis several years; and reports of two, of the four, physicians who examined him, tended to show that on the above mentioned date claimant suffered an attack of angina pectoris. The crucial issue was whether or not claimant's work caused this heart condition so as to constitute it an accidental personal injury arising out of, and in the course of, his employment. Of the above mentioned four physicians, two expressed the opinion that there was no connection between claimant's work and his heart condition, while the other two doctors gave opinions to the opposite effect. The trial tribunal evidently believed that claimant's work did not cause or aggravate his heart condition, for it found that claimant "did not sustain an accidental personal injury arising out of and in the course of his employment * * *", and denied his claim.

In seeking vacation of the Industrial Court's order, claimant takes the position that there is no evidence directly disputing

the reports of his Doctors F and B to the effect that the combination of his arteriosclerosis with an unusual exertion in performance of his work on August 3, 1961, precipitated claimant's onslaught of angina pectoris that day.

It appears from undisputed evidence that on the day in question, claimant, in connection with his duties as a highway general maintenance man, was cutting Johnson grass as high, or higher than, his head, outside the guard poles, on a curve in the highway right of way south of Bradley, Oklahoma, with a hand tool similar to a scythe, or sickle, and called a "yo-yo". According to claimant's testimony, the temperature that day was 103 or 104 degrees, and during the course of his cutting, and just before the noon hour, he developed a pain and a smothering sensation in the center of his chest. He testified that he then " * * * just kind of hunkered down on the ground", told the other men working with him how he felt and one of them said: "you better slow down; it might be your heart." Claimant further testified that he didn't eat lunch that day and had not done any yo-yoing since. He further testified that the rest of the day he drove the truck, that he and his helper had been using, and that the two were assigned the job of replacing the Scotch light bands on the road's guard rail posts and bridgeheads with new ones, and painting the posts. Claimant further testified that he continued to do this type of work, which he described as "lighter" work than yo-yoing, until that Fall, when there was a lot of rainy weather and not much to do except patrol the roads and patch any holes found in them. Claimant also testified that after the August 3rd, 1961, incident, physical exertion made his heart beat fast, and his breath short, and caused a "hurting" in his chest. He further testified that his condition became worse "as time went along * * *".

Time records claimant's employer introduced in the Industrial Court show that claimant worked continuously from August 3, 1961, to the Summer of 1962, when, beginning in May, he took an annual vacation of 12 days which extended into June. Claimant testified that, during this vacation, he did his own yard work, including the mowing of his lawn once a week. Also during this vacation, he was examined by a Dr. M of Chickasha, who advised him that he had a heart condition. Claimant then went on sick leave, beginning June 7, and lasting through June 15. On June 18, 1962, he returned to work. Thereafter, on June 28, 1962, claimant was examined by Dr. F, and, after this doctor also advised him that he had a heart condition and to quit smoking the "perhaps a pack" of cigarettes he was then smoking per day, he quit his job, as this doctor directed him to do. Claimant's Form 3 was filed on July 16, 1962.

In the medical reports which petitioner relies upon, as being undisputed, Dr. B expressed the opinion that the claimant's heart condition " * * * was aggravated by his work of August 3, 1961"; and Dr. F stated: " * * * I do feel the extra ordinary exertion related to 3rd of August, 1962, is probably a precipitating factor relative to the onset of present severe angina pectoris." In describing the circumstances surrounding the incident which it thus erroneously referred to as having occurred in August, 1962, rather than in August, 1961, this latter report stated: "While engaged in cutting grass with a large scythe (which is not part of his ordinary occupation as a truck driver) * * *." Claimant's testimony revealed that his duties as a general maintenance man were not confined to driving a truck, and that August 3, 1961, was by no means the first time that he had cut grass with a yo-yo during the course of his employment with respondent.

In Dr. R's report, claimant's ailment was diagnosed as a "coronary arterio disease with angina pectoris", and it was further stated:

"The next question that arises is what effect the exertion done by the patient in August, 1961, had on the *development* of his disease. In my opin-

ion it had nothing to do with it at all. * * *." (Emphasis ours).

In Dr. D's report, he said:

"From the history this man gives, I agree that he has arteriosclerotic heart disease involving the coronary blood vessels, and he has anginal pains in the chest as a result of this. This is a medical disease due to natural causes. I see no connection between *the cause* of this illness and the work that he has been doing the past 12 years. He believes this illness began August 3, 1961, * * * but he did not find it necessary to stop work, or consult any doctor, or get any treatment until some 10 months later. * * *" (Emphasis ours).

By calling attention to the use of the words "development" and "cause" in the above quoted reports, and pointing out the difference in the meaning of these words and the words "aggravation" and "precipitation", and then expounding his own theory of the way in which claimant's attack of angina pectoris came about on August 3, 1961, claimant's counsel attempts to support his argument that the reports of Drs. R and D *do not directly* refute Dr. F's report, and therefore furnish insufficient evidentiary basis for the Industrial Court's finding and order. We are not impressed with this argument. The only court opinion cited to support it is one that never became final in Byers v. Creeco Mill & Elevator Co., and was superseded by the opinion reported at Okl., 388 P.2d 476. To our way of thinking, claimant gives the opinions expressed by Drs. R and D, as to the connection, if any, between claimant's work on August 3, 1961, and his attack of angina pectoris, a much too narrow and literal interpretation. The general contest and intendment of these doctors' reports is such that we cannot say they furnish insufficient support for a valid conclusion by the trier of the facts that there was no causal connection between claimant's work on August 3, 1961, and his angina pectoris. In this connection, see Oklahoma Gas & Elctric Co. v. State Industrial Court (Okl.), 366

P.2d 609. It therefore follows that we cannot hold that said tribunal's finding and order is without any competent evidence reasonably tending to support it. Accordingly, under the rule reiterated, and followed, in the cited case, the State Industrial Court's order must be sustained. It is so ordered.

HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.