**LeFLORE COUNTY WHOLESALE GROCERY and Federated Mutual Implement and Hardware Insurance Company, Petitioners,**

v.

**Arthur HEAVENER and the State Industrial Court, Respondents.**

**No. 40741.**

Supreme Court of Oklahoma.

March 2, 1965.

John F. Eberle, Oklahoma City, for petitioners.

Gene Stipe, McAlester, of counsel, Stipe, Gossett & Stipe, McAlester, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

DAVISON, Justice.

This is an original proceeding by LeFlore County Wholesale Grocery, employer, and its insurance carrier, Federated Mutual Implement and Hardware Insurance Company, as petitioners, to review an award of the State Industrial Court to Arthur Heavener, claimant.

Claimant filed his claim for compensation before the State Industrial Court on February 11, 1963, and on March 28, 1963, a hearing was had before a trial judge.

Claimant testified that on October 15, 1962, he was employed by LeFlore County Wholesale Grocery as a truck driver and delivery man and on said date while "lifting a sack of stuff" he experienced pain in his left side; that he "had to set it down and rest a little while" before he could finish unloading the truck; that on October 18, 1962, while lifting a sack of feed weighing 100 pounds the pain struck him again; that he reported this accident to Mr. Cherry, his boss, who sent claimant to Dr. W for examination and. treatment; that Dr. W said he had pulled a muscle in his chest; that claimant was off six and one-half working days and was paid compensation for that period of time; that he returned to work on October 29, 1962, and worked until November 30, 1962, suffering pain all the while; that on December 2, 1962, while at church he "passed out" and was removed to his home; a Dr. L was called who, after examining claimant twice, shortly before noon and later in the afternoon, placed claimant in the hospital where he remained until the following night; that he returned to his home and the next night, which was December 4, 1962, he became ill again and was returned to the hospital where he stayed until the following Friday night, December 7, 1962; that claimant "laid around the house" until a week later when he returned to work on December 14, 1962; that he worked December 14 and 15, was off the next day, which was Sunday and returned to work Monday, December 17, 1962, when shortly after lunch he became ill, had to cease work and has not worked since that time.

Thomas H. Cherry testified for petitioners. He stated he was the manager of LeFlore County Wholesale Grocery and that on October 18, 1962, claimant told him he had hurt himself; that claimant "got sick and peaked and white and he had to sit down for an hour or so;" that he, the witness, sent claimant to Dr. W; that claimant was off work that time for six and one-half days and was paid compensation for that period.

Dr. L testified for claimant by way of deposition. His testimony was that on December 2, 1962, he was called to the home of claimant at approximately 11:00 o'clock A.M. where he found claimant in bed "very pale and clammy, complaining of chest pains and shortness of breath" and that on examination claimant's pulse was very slow; that he informed claimant he wanted to observe him for a few hours and around 5:00 o'clock P.M. he admitted claimant to a hospital where certain tests were made; that he didn't see claimant again until December 17, 1962, when "he was brought in with this chest pain; and he was feeling real fainty and he had marked weakness and his pulse was very slow and I sent him home to rest;" that he next saw claimant on December 22, 1962, that claimant was still having trouble, and that witness at that time referred claimant to Dr. C at Ft. Smith, Arkansas, where claimant was again hospitalized; that in his opinion claimant had a myocardial infarction when he "exerted himself lifting groceries" and that he was permanently and totally disabled to do ordinary manual labor.

Dr. C testified for claimant by deposition. He stated he first examined claimant on January 17, 1963; that as a result of the examination his diagnosis was "arteriosclerotic heart disease, posterior myocardial infarction, date undetermined, incomplete right bundle branch block, intercostal neuralgia subsiding;" that in his opinion "it is impossible to date the onset of the heart attack because of the complicating chest wall injury which produced pain quite similar to what he may have sustained as a result of the heart attack;" that the myocardial infarction could have happened anywhere from October 15, 1962, to December 2, 1962; that claimant was permanently and totally disabled for the performance of ordinary manual labor.

Dr. H testified in behalf of petitioners. He stated that he examined claimant on April 18, 1963; that the electrocardiograms made on claimant "represent an incomplete right bundle branch block" but was not a

myocardial infarction; that claimant had intercostal neuralgia association with a muscular spasm as a result of his lifting while working on the job; that claimant did not have a heart attack and would have no permanent disability.

Dr. D testified for petitioners. His testimony was that he examined claimant on April 24, 1963, and that claimant had sustained an incomplete right bundle branch block, that while claimant had "something" that made his heart beat slow, that made him tired and weak, that he "didn't believe it was myocardial infarction;" that claimant had sustained no permanent disability.

The trial judge entered an order on June 4, 1963, with the pertinent parts as follows:

"That on or about Oct. 15, 1962, claimant sustained an accidental personal injury, arising out of and in the course of his employment with said respondent, consisting of an injury to his heart. That claimant had a recurrence on Oct. 18, 1962 to his heart and that claimant was off work at various times until Dec. 8, 1962; that claimant's wages were sufficient to fix his compensation rate at $35.00 for T.T.D. & $30.00.

"That claimant is now totally disabled for the performance of ordinary manual labor, for which he is entitled to 500 weeks at $30.00 per week, or $15,000.00, less tax and atty. fee."

The order was affirmed on appeal by the State Industrial Court en banc.

Petitioners advance six propositions for reversal of the lower court's order. Each will be considered in the order set forth in petitioners' brief.

■ The first contention is that the order is "fatally defective and should be vacated" in that "the court fails utterly to make a finding of fact that there is any permanent disability." Petitioners cite numerous cases as authority for the rule that the State Industrial Court is required to make specific findings of fact and conclusions of law and where the findings of fact

and conclusions of law are too indefinite and uncertain for judicial interpretation, the court will, on appeal, vacate the order for further proceedings.

We agree this is the proper rule of law but it is not applicable to the order herein. At the initial hearing before the trial judge it was stipulated by petitioners that claimant was employed on the days in question, that his wages were sufficient to entitle claimant to the maximum rate of compensation, that employer was covered by compensation insurance and that the employment came within the Workmen's Compensation Act. The only questions of fact then to be determined by the State Industrial Court were: (1) did claimant sustain an accidental injury arising out of and in the course of his employment, and if so (2) did he sustain any disability as a result thereof, and if he did (3) to what extent?

■ In perusing the order, we think the findings pertinent to the above questions are not too indefinite and uncertain for proper judicial interpretation. It is clear the lower court determined in its first finding that on October 15, 1962, claimant sustained an accidental injury to his heart arising out of and in the course of his employment, and on October 18, 1962, suffered an additional injury to his heart. In its second finding it used the words "now totally disabled," however, when it found claimant was "entitled to 500 weeks, (the maximum) at $30.00 per week or $15,000.00," it is apparent from such finding that the lower court determined that as a result of the accidental injury the claimant had sustained disability which was both permanent and total.

Petitioners urge that "If the trial judge believed that claimant was totally disabled, he should have clarified the fact and should have stated definitely what date he considered 'now.'"

In the first paragraph of its judgment the trial tribunal ordered "that respondent or insurance carrier pay to claimant the sum of $720.00, same being the accrued portion of the award herein made, and that

from June 4, 1963, the balance of said award to be paid to claimant at the rate of $30.00 per week until the total award * * has been paid to claimant." By dividing $30.00 into $720.00, we find that the lower court found claimant became totally and permanently disabled 24 weeks before June 4, 1963, or on December 17, 1962, the date which the undisputed evidence clearly shows to be the last day claimant worked.

In Gregory v. State Industrial Commission, Okl., 360 P.2d 716, we held that an order of the Industrial Court which is sufficiently clear that the parties are able to ascertain the extent to which their rights are fixed, is not void for uncertainty.

█ We hold the order, by its findings and judgment, is definite and certain to the extent its meaning can be readily ascertained.

Petitioners' propositions two and five will be considered together since they are so nearly identical. Number two is that "judgment herein is premature and is based on conjecture, surmise and speculation." Number five is "the court erred in hearing evidence as to permanent disability when claimant had not reached his maximum healing."

The first hearing on the claim was held on March 28, 1963. At that time the claimant asked that the matter be heard on both temporary and permanent disability. The petitioners urged that the healing period had not terminated and that a proper evaluation could not be made as to the permanent disability. The trial judge stated the matter would be heard for whatever relief was indicated. Claimant then testified and the judge continued the matter for the taking of depositions of claimant's doctors. These depositions were taken on April 8, 1963, and the matter was finally heard on April 25, 1963.

█ We have held many times that the burden of proof is on the claimant to prove that disability was caused by an accident arising out of and in the course of his employment. Anderson v. Bills Bakeries, Okl., 393 P.2d 524. After the claimant pre-

sents his evidence, the respondent has the burden of refuting the claim. It then becomes the duty of the State Industrial Court to make specific findings of the ultimate facts responsive to the issues. Wiles v. City of Stroud, Okl., 395 P.2d 404; Brookshire v. Knippers Plumbing Co., Okl., 390 P.2d 887.

█ In the case at bar the petitioners were fully apprised that the case was to be heard on all the issues. They did not advise the court that they were not prepared to try all issues and they did not ask for a continuance. There is some conflict in the evidence as to the period of healing necessary to evaluation of permanent disability. However, there is evidence supporting the trial court's decision to determine the disability.

Dr. C testified that in his opinion claimant's healing period, as far as the infarct was concerned, ended "roughly, we'll say, to be generous, six to eight weeks after I saw him at the hospital in December."

Dr. D, who testified for respondent, testified as follows:

"Q. Doctor, is it your opinion that whever happened to him, he is healing, his healing period is completed as well as it is going to get?

"A. Yes, sir."

█ We hold the issue of whether claimant sustained any permanent disability was not prematurely heard.

Petitioners urge that the opinions of Dr. C and Dr. L were based on speculation and conjecture because they stated, in effect, it would be approximately six months after the accident before a complete evaluation of claimant's condition could be determined. Petitioners cite the cases of Bergstrom Painting Co. v. Pruett, 205 Okl. 291, 237 P.2d 453, and Sparks v. General Mills, Inc., Okl., 262 P.2d 155, as authority for the rule that testimony based on speculation and conjecture is without probative value and should be disregarded.

The case of Dolese Bros. Co. v. McBride, Okl., 268 P.2d 268, is analogous to the pres-

ent case. There the claimant had twice been operated for a back injury. The operating doctors assessed claimant's disability at 30 per cent. The claimant's doctor estimated the disability to be 100 per cent. The award was for 60 per cent. Petitioners contended that was no competent evidence to sustain an award in excess of the 30 per cent assessed by their doctors. The claimant's doctor had testified as follows:

"* * * Since this patient was last operated in September, 1952, in my opinion, I thought he had not had enough time to receive maximum benefits from this surgery. From my examination, I do not believe that patient should have another operation at this time, however, I believe him to have 100 per cent permanent total disability for doing manual labor."

The doctor further stated that the claimant might possibly receive some benefits from the operation up to a year after it was performed, but that he would not recommend another operation and testified that even though claimant might improve some, claimant would be 100 per cent disabled to perform ordinary manual labor when he reached maximum healing.

In sustaining the award we said:

"* * * The doctor did not testify that respondent was still temporarily totally disabled nor did he testify that his condition would improve in time and attempt to estimate the disability he might have after such improvement, but on the contrary specifically testified that he is now permanently totally disabled and that regardless of any possible benefits he might receive from the operation he will remain permanently totally disabled and testified to the facts upon which he based such conclusion.

"Petitioner cites and relies upon Bergstrom Painting Co. v. Pruett, 205 Okl. 291, 237 P.2d 453, and Sparks v. General Mills, Inc., Okl., Sup. 262 P.2d 155. These cases are distinguishable from the present case on the facts. In neither of these cases did the doctor

testify to any present existing permanent disability sustained by the employee, as did the doctor in the present case, but merely expressed an opinion as to what disability he might have at some future time."

Also in the case of Skelly Oil Co. v. Admire, Okl., 293 P.2d 349, the petitioners there cited the Bergstrom and Spark cases, supra. There we said:

"* * * These cases were distinguished in Dolese Bros. Co. v. McBride, Okl., 268 P.2d 268, wherein we held in effect that an opinion as to the present degree of disability was sufficient. If there is testimony of the degree of present disability the fact that the doctor makes other statements relative to the physical condition of claimant is not fatal. * * *"

In the case before us Dr. C testified that "if he were my patient I would not let him ever again perform any heavy manual labor."

Dr. L stated: "as far as I am concerned, this boy can never do manual labor;" "I can go on record right today and say he can never go back to manual labor, the kind that he was doing;" that it was his opinion "that this patient is 100% totally disabled at the present time and that he will be totally disabled from now on to do the type of work that he was doing and that he is trained to do."

■ There is no speculation or conjecture by the above two doctors as to future disability. They both stated that at the present time claimant is permanently and totally disabled.

Petitioners' number three proposition is that "the judgment for total disability, whether temporary or permanent is erroneous and is not supported by the evidence."

■ The State Industrial Court, and not the Supreme Court, is the sole judge of the credibility of witnesses, be they lay or expert, and the weight to be accorded their testimony. Wade Lahar Construction Co. v. Howell, Okl., 376 P.2d 221. All four

doctors herein testified that claimant had a "right bundle branch block." Their testimony is in conflict as to what caused this condition and the extent of disability. Drs. C and L testified a myocardial infarction caused the "right bundle branch block" and they testified claimant was permanently and totally disabled as a result of the condition. It is apparent the trial tribunal, under the facts in this case, accorded the greater credence to the testimony of Drs. C and L.

■ It is a well stated rule that this court will not review conflicting evidence on non-jurisdictional questions to determine the weight and value thereof and where an award is supported by competent evidence, the same will not be disturbed by this court on review. Anderson v. Bills Bakeries, supra.

■ We hold there is competent evidence to support the finding of the State Industrial Court that claimant is permanently and totally disabled.

The fourth contention of the petitioners is "that the ex parte statements of claimant's doctors were erroneously considered by the court." Petitioners cite the cases of Mid-Union Drilling Co. v. Graham, 184 Okl. 514, 88 P.2d 619; Standard Coal Co. v. State Industrial Commission, 139 Okl. 269, 281 P. 966; and F. W. Merrick, Inc. v. Cross, 144 Okl. 40, 289 P. 267, as authority for the rule that an ex parte statement of a physician cannot be considered as evidence unless, of course, it is agreed to by the opposing party.

In all three cases above cited the doctors were not produced as witnesses, only their written reports were in evidence. In the Merrick case, supra, 289 P. at page 268, is the following language:

"By referring to the first paragraph of the order of the commission, supra, it clearly appears that the award of the commission was based on the report of the examining physicians. They did not testify as witnesses in the case. The petitioner had no opportunity to cross-examine them. They filed a report, and the commission based its award upon the report."

In the Mid-Union Drilling Co. v. Graham case, supra, 88 P.2d on page 620, is the following:

"The sole specification of error is that an ex parte statement of a physician *not produced as a witness* cannot in the absence of an agreement or waiver be considered by the Commission * * * *." (emphasis ours)

■ At the initial hearing when the claimant offered into evidence the written reports of Drs. C and L petitioners objected on the grounds they were not the best evidence. The trial court correctly sustained the objections on those grounds.

At the taking of the deposition of Dr. L, the witness identified his report as setting forth the care, treatment, observation and opinion as to claimant's disability and stated that the report was his present opinion and views regarding claimant. After making objection to introduction of the report, the petitioners cross-examined Dr. L at length regarding the contents thereof.

When Dr. L identified the written reports as his, stated that they contained his opinions, and when petitioners had the opportunity to cross-examine Dr. L and did cross-examine and inquire of him regarding additional aspects and circumstances of the case which were deemed favorable to the position of petitioners, the reports were then no longer ex parte statements.

It would have been a useless thing to have had the doctor read the reports into the record.

The record does not reveal that the written report of Dr. C was objected to by petitioners when it was introduced at the time of taking his deposition.

■ We hold that the lower court did not err in considering the written reports of Drs. C and L.

The sixth and last proposition of petitioners is that "claimant's medical experts failed to prove that alleged heart condition

arose out of the industrial accident of October 15 or October 18, 1962."

Dr. C testified that "sometime in the interval between October 15 and November—or December 2, 1962, a clot formed in one of those arterial branches and occluded the artery, plug it up, and that area of heart muscle supplied by that artery was damaged;" that "we have to make an estimate of the date, anywhere from October 15th to December 2, it could have happened;" "the symptons, of course, appeared October 15 and continued through December 2:"

"Q. And he does give you a history at that time while lifting a heavy object of having symptons, is that right, sir? A. He did in his history on two occasions.

"Q. Yes. And that was both in lifting heavy objects, is that right, Doctor? A. One sixty pound box of groceries and the other he estimated it to be a hundred pound sack of feed.

"Q. And those instances would be apt to aggravate the condition which you found, is that right Doctor? A. It would aggravate the symptons arising from the condition.

\* \* \* \* \* \*

"Q. And does that lead you to believe that the onset was at the time that he had the strain? A. Either at that time or it could have been, again pure speculation, a silent coronary affecting his conduction mechanism with result of marked slowing of the heart and loss of consciousness."

Dr. L stated "that this man definitely had a myocardial infarction at the time when he was trying to work and was exerting himself lifting groceries, possibly at the same time, he had a strained muscle also."

A physician's opinion need not be given in categorical terms, nor in the precise language of the statute, and an award of the State Industrial Court rests on competent evidence when it is supported by the general tenor and intent of the medical testimony. Star Printery Company v. Pitman, Okl., 376 P.2d 291.

Finding the record free from errors of law and the order of the lower court supported by the evidence, the award is sustained.

HALLEY, C. J., JACKSON, V. C. J., and JOHNSON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.