**NATIONAL ZINC COMPANY and Hartford Accident & Indemnity Company, Petitioners,**

v.

**Louis STEFANOPOULOS and the State Industrial Court, Respondents.**

**No. 41240.**

Supreme Court of Oklahoma.

Sept. 14, 1965.

Covington & Gibbon, A. M. Covington, Tulsa, for petitioners.

Howard C. Triggs, Oklahoma City, Charles R. Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for respondents.

WILLIAMS, Justice.

On October 22, 1962, Louis Stefanopoulos, hereinafter referred to as claimant, filed a claim for compensation before the State Industrial Court against National Zinc Company, employer, and its insurance carrier, Hartford Accident and Indemnity Company, the petitioners herein.

The trial judge entered an order finding that claimant had not sustained an accidental injury as alleged and denied the claim. On appeal to the court en banc, the court vacated the trial judge's order and found that claimant had sustained an accidental injury to his back arising out of and in the course of his employment on May 8, 1962, which resulted in seven and one-half per cent permanent partial disability to his body as a whole.

Petitioners bring this original proceeding for a review of the order and advance the following two propositions for reversal of the same:

"1. There is no evidence the claimant suffered an accidental personal injury arising out of and in the course of his employment.

"2. The award of 7½% partial disability is not supported by competent medical proof."

Whether disability is due to compensable injury or to other cause is a question of fact for the determination of the State Industrial Court in a hearing on this question and this Court will not disturb the finding made by said court thereon if there is any competent evidence reasonably tending to support such finding. Crest Building Corporation v. Lowe, Okl., 388 P.2d 512; Byers v. Creeco Mill & Elevator Company, Okl., 388 P.2d 476; Sanders v. State Industrial Commission, Okl., 331 P.2d 478.

The only lay testimony in the case is that of claimant. He testified that on May 8, 1962, he reported for work at 3:00 o'clock A.M.; that he worked that day as a "connie boy"; that the duty of a connie boy is to clean the smelting furnace condensers which are made of baked clay and which are twenty-four inches in length, twelve inches in diameter at one end and sloping to four inches at the other end; that they weigh about twenty pounds when new and perfectly clean but weigh from some thirty to thirty-five to forty pounds when covered with the crust that is formed after being used for a period of time in the furnaces; that in removing the crust from the condensers, it was necessary that one person scratch at the crust with a special tool and for the other person to trim the edges by knocking off the crust that had formed there. Claimant testified that on the morning in question it was his duty to trim the edges and in order to trim them it was necessary that he lift the condensers from the floor, a distance of a foot to a foot and one-half; that after working on the ninth or tenth section and about 4:30 A.M. in bending over and picking up a condenser, he experienced a pain in his back; that he told his fellow employee about this but continued to work; that about 5:00 A.M., his back was paining him so that instead of bending to do his work, he was squatting, and at this time Lottie, claimant's boss, came up to claimant and ask "Louie, is there something the matter with you"; that he then told his boss that his back was bothering him "and if it gets any worse" he would have to go home; that his boss replied "Okay, just let me know if you get worse and I will report the injury up to the office when they come to work." Claimant testified that he continued to perform the same work until approximately 7:00 o'clock A.M. when he had to quit and go home; that Jack Truman, the personnel manager, called him at home later in the morning and asked claimant to come back to the plant and talk to him; that he returned, told Mr. Truman what had happened and asked Truman to furnish him medical treatment but it was refused; that he was off six days because of the injury and on May 21, 1962, he went to Dr. D. for treatment; that he worked until June 1, 1962, when the union employees went on strike until August 3, 1962, during which time he continued to receive treatment from Dr. D.; that when the other employees returned to work he was still under the doctor's care and he called the plant superintendent, John Van Akin, and advised him that he couldn't return to work because of his back condition; that he returned to work on November 19, 1962, and was so employed at the time of trial.

Dr. M. testified for claimant by written report. He noted he first saw claimant on November 29, 1962, "at which time he gave a history of having received an injury on May 8, 1962, while working at the National Zinc Company plant. He stated that he had a strain of his back at that time * * *." Dr. M. further stated that his original examination of claimant revealed "muscle stiffness, soreness, and difficulty in bending"; that he next examined claimant on October 15, 1963, and on January 27, 1964, and that claimant still had muscle stiffness and limited bending; that "X-ray films revealed some osteoarthritic changes involving the lumbar spine, and some narrowing of the space between L–5 and S–1;" that in this opinion "this is largely a chronic inflammatory, which is aggravated by his work" and that claimant "has approximately fifteen per cent permanent partial disability to the body as a whole."

The trial judge ordered claimant examined by Dr. P. Dr. P. reported to the court that in her opinion claimant "has no orthopedic or neurological disease resulting from injury sustained on the alleged date of May 8, 1962."

The petitioners did not offer any medical evidence.

Petitioners argue that the claimant suffered no strain as result of lifting the condensers.

There is evidence in the record tending to show that on May 8, 1962, claimant injured his back while lifting and cleaning the furnace condensers; that the employer had actual notice of claimant's accidental injury; and that claimant made timely filing of his claim.

In the case of Safeway Stores, Inc. et al. v. Evans et al., Okl., 376 P.2d 336, we held in effect that an injury resulting from strain constitutes an accidental injury and is compensable where it occurs while the employee is doing work in the usual and ordinary manner, though nothing unusual occurs or happens to cause strain.

■ We think the evidence is sufficient to support the findings of the lower court.

Petitioners finally argue there is a total absence of any medical testimony "saying" what percentage of disability the claimant has from "anything occurring on or about May 8, 1962."

■ A physician's opinion need not be given in categorical terms nor in the precise language of the statute, and an award of the State Industrial Court rests on competent evidence when it is supported by the general tenor and intent of the medical testimony. LeFlore County Wholesale Grocery v. Heavener, Okl., 400 P.2d 167; Blackwell v. Special Indemnity Fund, Okl., 398 P.2d 665; Raska v. Tulsa Tiling Service, Okl., 397 P.2d 661; Holliman Drilling Co. v. Herrell, Okl., 397 P.2d 148; Townley's Dairy v. Gibbons, Okl., 395 P.2d 947; Star Printery Co. v. Pitman, Okl., 376 P. 2d 291.

■ From the tenor of Dr. M's statement that claimant gave him a history that he had strained his back while working for employer on May 8, 1962, and from his clinical findings, we believe the intent of Dr. M. to be that the occurrence on said date caused the percentage of disability which Dr. M. stated claimant had. We hold this to be sufficient competent medical evidence to support the trial tribunal's finding of disability to claimant.

Therefore, finding the record free from errors of law and the order of the State Industrial Court amply supported by the evidence, the award is sustained.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.